# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KATE ROGERS, ED.D., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 5:25-cv-1500-XR |
| | § | |
| ALAMO TRUST, INC., DAN PATRICK, | § | |
| DAWN BUCKINGHAM, REMEMBER | § | |
| THE ALAMO FOUNDATION, | § | |
| WELCOME WILSON, JR., and | § | |
| ESPERANZA ANDRADE, | § | |
| *Defendants*. | § | |

## DEFENDANT, TEXAS LT. GOVERNOR DAN PATRICK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, formerly the President and CEO of Alamo Trust, Inc., filed this suit against Dan Patrick, the Lieutenant Governor of the State of Texas, alleging violations of her First Amendment right to free speech after the Lt. Governor opined that Plaintiff's previous criticism of the Texas legislators that had recently appropriated more than $400 million to the Alamo Project undermined the credibility of the Alamo Trust. Disregarding the free speech rights of Lt. Governor Patrick, Plaintiff's Complaint is nothing more than a public relations missive that fails to claim any actionable wrong. The First Amendment does not prohibit Lt. Governor Patrick from expressing his opinions. In fact, it specifically *protects* the Lt. Governor's speech complained of by Plaintiff. Therefore, sovereign and qualified immunity bars all of Plaintiff's claims. Moreover, Plaintiff lacks standing and has failed to state a claim upon which relief can be granted requiring dismissal of her claims.

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................ii

**TABLE OF AUTHORITIES** .........................................................................................iii

**BACKGROUND** ............................................................................................................ 1

**SUMMARY OF ARGUMENT** .....................................................................................2

**ARGUMENT AND AUTHORITIES** ............................................................................3

    I.    The Court should dismiss Plaintiff's Claims under Rule 12(b)(1) for Lack of Jurisdiction........................................................................................... 3

        1.    Plaintiff lacks standing to bring her § 1983 claims against Defendant.......................... 4

        2.    Sovereign Immunity bars Plaintiff's Claims...................................................... 6

    II.    The Court should dismiss Plaintiff's Claims under Rule 12(b)(6) for Failure to State a Claim.............................................................................. 8

        1.    Qualified Immunity bars Plaintiff's claims because she does not state a violation of clearly established law. ................................................. 8

        2.    Retaliatory speech by a public official does not constitute cognizable retaliation under the First Amendment. ......................................................... 10

        3.    Plaintiff has not—and cannot—plead deprivation of a "clearly established" right....................................................................... 12

    III.    Plaintiff has failed to state a claim for conspiracy under § 1983.................................... 15

**CONCLUSION** ............................................................................................................ 17

**CERTIFICATE OF SERVICE** ................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ...................................................................................................13

*Backe v. LeBlanc,*
    691 F.3d 645 (5th Cir. 2012).......................................................................................... 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................ 8

*Bennett v. Spear,*
    520 U.S. 154 (1997) ........................................................................................................ 4

*Bevill v. Fletcher,*
    26 F.4th 270 (5th Cir. 2022) ....................................................................................9, 15

*Black Farmers and Agriculturalists Ass'n, Inc. v. Hood,*
    No. 3:13-CV-763-TSL, 2014 WL 935147 (S.D. Miss., March 10, 2014)................................... 11

*Cinel v. Connick,*
    15 F.3d 1338 (5th Cir. 1994) ........................................................................................16

*Cole v. Carson,*
    935 F.3d 444 (5th Cir. 2019) ........................................................................................15

*Colson v. Grohman,*
    174 F.3d 498 (5th Cir. 1999)........................................................................................11

*Conn v. Gabbert,*
    526 U.S. 286 (1999)........................................................................................................ 9

*Coury v. Prot,*
    85 F.3d 244 (5th Cir. 1996) ...........................................................................................3

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018) ................................................................................................... 13, 14

*Ex parte Young,*
    209 U.S. 123 (1908)............................................................................................... *passim*

*Fernandez-Montes v. Allied Pilots Ass'n,*
    987 F.2d 278 (5th Cir. 1993) ........................................................................................ 8

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ................................................................................................ 4

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ...............................................................................................14

*Hafer v. Melo,*
502 U.S. 21 (1991) ................................................................................................. 6

*Hale v. Townley,*
45 F.3d 914 (5th Cir. 1995)....................................................................................15

*Hammerhead Enters., Inc. v. Brezenoff,*
707 F.2d, 33 (2d Cir. 1983)....................................................................................11

*Hanks v. Rogers,*
853 F.3d 738 (5th Cir. 2017)..................................................................................13

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ............................................................................................... 8

*Hill v. City of Seven Points,*
No. 00-41436, 2002 WL 243261 (5th Cir. Jan. 17, 2022)........................................16

*Home Builders Ass'n of Miss., Inc. v. Madison,*
143 F.3d 1006 (5th Cir. 1998).................................................................................3

*Howery v. Allstate Ins. Co.,*
243 F.3d 912 (5th Cir. 2001) ..................................................................................3

*In re Abbott,*
956 F.3d 696 (5th Cir. 2020)................................................................................... 6

*In re Katrina Canal Breaches Litig.,*
495 F.3d 191 (5th Cir. 2007)................................................................................... 8

*Inclusive Cmtys. Project, Inc. v. Dep't of,*
*Treas.*, 946 F.3d 649 (5th Cir. 2019) ......................................................................5

*Johnson v. Johnson,*
385 F.3d 505 (5th Cir. 2004) .................................................................................. 9

*Keenan v. Tejada,*
290 U.S. 252 (5th Cir. 2002) ..................................................................................10

*King v. Sharp,*
No. 4:21-CV-01005, 2023 WL 4303637 (E.D. Tex. June 30, 2023) ........................7

*Kinney v. Weaver,*
367 F.3d 337 (5th Cir. 2004) ...................................................................................14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).................................................................................................4

*Matherne v. Larpenter,*
216 F.3d 1079 (5th Cir. 2000) .................................................................................11

*McCarthy ex rel. Travis v. Hawkins,*
381 F.3d 407 (5th Cir. 2004) ...................................................................................6

*McClendon v. City of Columbia,*
305 F.3d 314 (5th Cir. 2002) ...................................................................................9

*McLaughlin v. Watson,*
271 F.3d 566 (3d Cir. 2001).....................................................................................11

*Mitchell v. Forsyth,*
472 U.S. 511 (1985) .................................................................................................9

*Moran v. Kingdom of Saudi Arabia,*
27 F.3d 169 (5th Cir. 1994)......................................................................................4

*Morgan v. Swanson,*
610 F.3d 877 (5th Cir. 2010) ...................................................................................9

*Morgan v. Swanson,*
628 F.3d 705 (5th Cir. 2010) ...................................................................................9

*Mullenix v. Luna,*
577 U.S. 7 (2015).....................................................................................................13

*Noonan v. Kane,*
No. 20-3610, 2022 WL 2702153 (3d Cir. July 12, 2022)...........................................11

*Nunez v. Simms,*
341 F.3d 385 (5th Cir. 2003) ...................................................................................13

*Okpalobi v. Foster,*
244 F.3d 405 (5th Cir. 2001) (en banc)....................................................................6, 7

*Pearson v. Callahan,*
555 U.S. 223 (2009) .................................................................................................9

*Pfannstiel v. City of Marion,*
918 F.2d 1178 (5th Cir. 1990)..................................................................................16

*Pickering v. Bd. of Educ.,*
  391 U.S. 563 (1968) ..................................................................................................10

*Prewitt v. Cont'l Auto.,*
  927 F. Supp. 2d 435 (W.D. Tex. 2013) ..................................................................12

*R.C. Maxwell Co. v. Borough of New Hope,*
  735 F.2d 85 ...............................................................................................................11

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001)..................................................................................3, 4

*Reule v. Jackson,*
  114 F.4th 360 (5th Cir. 2024)................................................................................4, 5

*Richardson v. Flores,*
  28 F.4th 649 (5th Cir. 2022) .....................................................................................7

*Rosenberger v. Rector and Visitors of Univ. of Va.,*
  515 U.S. 819 (1995).................................................................................................17

*Stockman v. Fed. Election Comm'n,*
  138 F.3d 144 (5th Cir. 1998) .....................................................................................3

*Suarez Corp. Indus. v. McGraw,*
  202 F.3d 676 (4th Cir. 2000) ...................................................................................11

*Thornton v. Micrografx, Inc.,*
  878 F. Supp. 931 (N.D. Tex. 1995) .........................................................................12

*United States v. Tex. Tech. Univ.,*
  171 F.3d 279 (5th Cir. 1999) .....................................................................................6

*Voluntary Purchasing Grps., Inc. v. Reilly,*
  889 F.2d 1380 (5th Cir. 1989) ...................................................................................4

*Ward v. Tex. Dept. of Crim. Just.,*
  No. H-21-2649, 2021 WL 4066993 (S.D. Tex. Sep. 7, 2021) ...................................7

*Wetherbe v. Texas Tech Univ. Sys.,*
  138 F.4th 296 (5th Cir. 2025)..............................................................................14, 15

*Williams on Behalf of J.E. v. Reeves,*
  954 F.3d 729 (5th Cir. 2020).......................................................................................6

*Wilson v. Layne,*
  526 U.S. 603 (1999).....................................................................................................9

**Statutes**

Tex. Nat. Res. Code § 31.450(a)(2) ................................................................................16

U.S. CONST. amend. XI ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 12 ......................................................................................................... 4

Fed. R. Civ. P. 12(b)(1) .............................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................7, 8

**Other Authorities**

*Alamo Plan*, https://www.thealamo.org/support/alamo-plan,
    (last visited January 14, 2026) ....................................................................... 1, 10

Alamo Trust, Inc., Fifth Amended and Restated Bylaws at § 1.02(a) ...........................1

Kate Rogers, *The Role of U.S. Historic Sites and Museums in Supporting Social Studies
    Instruction in K-12 Classrooms: A Qualitative Study*, 79 (May 2023) ..........................1

## BACKGROUND

Plaintiff was hired to serve as the Executive Director by Alamo Trust, Inc. ("Alamo Trust") in 2021. Alamo Trust is a non-profit corporation established to "raise funds and advance the restoration of the Alamo Complex." *See* Ex. 2, Fifth Amended and Restated Bylaws of Alamo Trust, Inc. ("Alamo Trust Bylaws"), at § 1.02(a) (cleaned up). As part of its mission, Alamo Trust created the Alamo Plan, which is currently underway to "[p]reserve the 300-year-old Church and Long Barrack, [r]ecapture the original mission site and battlefield footprint, and [c]reate a world-class Visitor Center and Museum to tell the full history of the site." https://www.thealamo.org/support/alamo-plan (last visited January 14, 2026). "In June 2023, Governor Greg Abbott signed into law more than $400 million appropriations request contained within the Texas State Budget for the Alamo Plan." *Id.*

Despite the largesse bestowed by the State of Texas in support of the Alamo Plan, upon the conclusion of the 2023 Legislative Session, Plaintiff complained that "[the] biggest dilemma for me as a researcher and the actual 'instrument' in this qualitative study [--the Alamo--] had to do with my own political views and my current environment." *See* Ex. 1, Kate Rogers, *The Role of U.S. Historic Sites and Museums in Supporting Social Studies Instruction in K-12 Classrooms: A Qualitative Study* (May 2023), at 79. Wholly irrelevant to Plaintiff's research, she chose to needlessly criticize the "conservative agenda" specifically referencing "voter suppression and concealed carry laws." *Id.* Acknowledging that her particular vision for the Alamo may not be politically "possible at this time," Plaintiff explained that her study and its implications "could have negative consequences for the Alamo Plan as well as [her] job." *Id.* at 80.

Upon discovering Plaintiff's rebuke of the same legislators that had appropriated $400 million in support of the Alamo Plan, Lt. Governor Patrick naturally reached out to Plaintiff for an explanation. The following day, on October 23, 2025, Lt. Governor Patrick sent a letter to the Alamo Trust wherein he indicated his belief that Plaintiff's "newly discovered writings undermine the credibility of the Alamo Trust" as she had a "totally different view of how the history of the Alamo should be told." Ex. 3. Further acknowledging that the entire story of the Alamo would be told, Lt. Governor Patrick insisted the "overriding emphasis must be on the '13 Days of Glory'" in order to ensure "future generations never forget the sacrifice for freedom that was made." *Id.*

Notwithstanding her explicit acknowledgement her study could have negative consequences for both the Alamo Plan and her job, Plaintiff apparently became "distraught" once she realized her criticism had become public knowledge. Understanding "the negative consequences for the Alamo Plan" resulting from her study had finally materialized, Plaintiff resigned her position as Executive Director. Yet, Plaintiff has now reversed course alleging entitlement to seemingly perpetual employment by the Alamo Trust free from criticism. This is not the law, and Plaintiff is not entitled to the relief she seeks.

## SUMMARY OF ARGUMENT

Plaintiff's claims should be dismissed under Rule 12(b)(1) due to a lack of standing and sovereign immunity. Additionally, Plaintiff's claims should be dismissed under Rule 12(b)(6) due to the Lt. Governor's qualified immunity and Plaintiff's failure to state a claim upon which relief may be granted.

Plaintiff brings her claims against Lt. Governor Patrick in his official capacity; however, due to a lack of traceability and redressability, Plaintiff lacks standing, and her claims must be

dismissed due to a lack of jurisdiction. Plaintiff's claims against the Lt. Governor in his official capacity are further barred by sovereign immunity. Plaintiff's claims against the Lt. Governor in his individual capacity fail to allege a violation of a constitutional right that has been clearly established and are barred by qualified immunity. Moreover, Supreme Court precedent proves fatal to Plaintiff's First Amendment claims. Regardless of whether Plaintiff is considered a private employee or public employee, her First Amendment claims fail as a matter of law. Because there is not any underlying First Amendment violation, Plaintiff's conspiracy claim similarly fails.

## ARGUMENT AND AUTHORITIES

### I. The Court should dismiss Plaintiff's Claims under Rule 12(b)(1) for Lack of Jurisdiction.

Rule 12(b)(1) authorizes a federal court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996). An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on any of three separate grounds: (1) the complaint standing alone; (2) the complaint

supplemented by undisputed facts evidenced in the record; or (3) the complaint, the undisputed facts, and the court's resolution of disputed facts. *Voluntary Purchasing Grps., Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir. 1989). The court may consider affidavits and other evidence in resolving factual issues relating to jurisdictional questions. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994). When a Rule 12(b)(1) is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion before addressing any motion as to the merits. *Ramming,* 281 F.3d at 161.

### 1. Plaintiff lacks standing to bring her § 1983 claims against Defendant.

To have standing to bring a suit, a plaintiff must show (1) an "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000). An injury in fact is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

Plaintiff's allegations fail to satisfy both the traceability and redressability requirements. To prevail on traceability, a plaintiff must demonstrate that the injury is fairly traceable to the defendant's challenged actions. "[T]here must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant." *Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024) (citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). Here, Plaintiff fails to show that the alleged harm she suffered is fairly traceable to the Lt. Governor considering she "offered to resign" "during an October 15 board meeting,"

eight days before Lt. Governor Patrick voiced his concerns. Dkt. 19 ¶ 55. Indeed, the Lt. Governor sent his letter to Alamo Trust on October 23, 2025. *See* Ex. 3.

Additionally, Lt. Governor Patrick does not have any authority over the operations of Plaintiff's employer, Alamo Trust, Inc., as the Alamo Trust Bylaws conclusively prove. *See* Ex. 2. Section 3.01 provides the Board of Directors of the Corporation will manage the Corporation's corporate affairs which, under Section 4.06, includes designation of an Executive Director as well as his or her removal at any time with or without cause. The authority of the Board of Alamo Trust certainly explains why Plaintiff's interview for the role of Executive Director "was conducted by Alamo Trust board members." Dkt. 19 ¶ 31. Moreover, Plaintiff readily admits, "Make no mistake about it: the [General Land Office] calls the shots at the Alamo." Dkt. 19 ¶ 31. Yet, that is not even entirely accurate as Section 3.09(a) of the Alamo Trust Bylaws simply allow the Texas General Land Office ("GLO") to appoint one individual to serve on the Board as a non-voting advisory member who is prohibited from being placed on any Executive Committee of the Board. *See* Ex. 2. Lacking any statutory or legal authority to direct the Alamo Trust's corporate affairs, Lt. Governor Patrick could not have "directed and coerced the Board Members of the Alamo Trust to terminate [Plaintiff]." Dkt. 19 ¶ 82.

Nor has Plaintiff demonstrated that her alleged injury will likely be redressed by a favorable decision against Lt. Governor Patrick. "To satisfy redressability, a plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Reule*, 114 F.4th at 368 (citing *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019)). Based on the same reasons supporting the lack of traceability, absent any authority to direct the corporate affairs of the Alamo Trust, any order issued by the Court against Lt. Governor

Patrick would be "utterly meaningless" as he remains unable to reverse Plaintiff's resignation or otherwise reinstate her. *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc) (holding "the injunction granted by the district court is utterly meaningless" as the "governor and the attorney general have no power to redress the asserted injuries" and finding a lack of jurisdiction).

### 2. Sovereign Immunity bars Plaintiff's Claims.

Plaintiff's claims against Lt. Governor Patrick are also barred by sovereign immunity, which is a jurisdictional bar. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 (5th Cir. 1999) (citing U.S. CONST. amend. XI). Lt. Governor Patrick is a state government official, and as such, is entitled to sovereign immunity, and Plaintiff's claims against him are barred unless Plaintiff establishes that sovereign immunity has been waived or an exception applies to overcome sovereign immunity. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).

*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient "connection" to the events giving rise to the cause of action. 209 U.S. 123 (1908); *see also In re Abbott,* 956 F.3d 696, 708 (5th Cir. 2020). To invoke the *Ex parte Young* exception, a proponent must establish three essential elements: (1) the suit must be brought against state officials acting in their official capacities; (2) it must seek prospective relief to address ongoing conduct; and (3) it must allege a violation of federal law. *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020). However, while the *Ex parte Young* exception allows prospective injunctive or declaratory relief, "[T]he Eleventh Amendment bars suits in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Hafer v. Melo,* 502 U.S. 21, 30 (1991).

To satisfy the first element, "a plaintiff must demonstrate that the official has some connection with the enforcement of a policy or act in question." *Ward v. Tex. Dept. of Crim. Just.*, No. H-21-2649, 2021 WL 4066993, at \*2 (S.D. Tex. Sep. 7, 2021) (citing *Okpalobi*, 244 F.3d 405, 414-15). A plaintiff may not rely on a defendant's "general duties" in demonstrating a connection with the act in question; rather, a defendant must have the *particular* duty to perform the act in question. *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) (emphasis added); *see also King v. Sharp*, No. 4:21-CV-01005, 2023 WL 4303637, at \*5 (E.D. Tex. June 30, 2023) (rejecting Plaintiffs attempt to apply *Ex parte Young* where they "have not alleged in their complaint what kind of connection [the defendants] have to employment decisions at [Texas A&M Engineering Extension Service] . . . [and only] speculatively offer that [the defendants] 'must have some connection with the determination of staffing levels, and any reduction in force' given their high-ranking titles within the Texas A&M University System"). A general duty is insufficient to invoke *Ex parte Young*. *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) ("To find the required connection, the district court relied on the Secretary's broad duties to oversee administration of Texas's election laws. Since then, however, our precedent has clarified that the Secretary's 'general duties under the [Texas Election] Code' fail to make the Secretary the enforcer of specific election code provisions.).

The Alamo Trust Bylaws confirm the Lt. Governor does not have any input regarding the hiring decisions of the Trust. Nor does Plaintiff identify any and simply relies on her own unfounded conclusions. Without any connection to the Trust's corporate affairs, Plaintiff cannot invoke the *Ex parte Young* exception to sovereign immunity because she cannot demonstrate that Lt. Governor Patrick has a direct and enforceable connection to the administration of Alamo Trust,

Inc. Accordingly, Plaintiff's claims against Lt. Governor Patrick are barred by sovereign immunity, no *Ex parte Young* exception exists, and the Court should dismiss Plaintiff's claims against the Lt. Governor.

## II. The Court should dismiss Plaintiff's Claims under Rule 12(b)(6) for Failure to State a Claim.

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citations, quotations, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal,* 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555). The Court is not required to conjure up unpled allegations in order to save a complaint, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice. . ." *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993).

### 1. Qualified Immunity bars Plaintiff's claims because she does not state a violation of clearly established law.

Government officials who perform "discretionary functions" are entitled to qualified immunity from § 1983 suits against them in their individual capacity. *Harlow v. Fitzgerald,* 457 U.S. 800, 801 (1982). Qualified immunity protects such officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). "Qualified immunity is immunity from suit under § 1983 rather than a mere defense to liability." *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Pearson,* 555 U.S. at 237). When, as here, defendant asserts qualified immunity as a defense in a Rule 12(b)(6) motion, he is entitled to dismissal before the commencement of discovery unless the plaintiff sufficiently alleges a violation of a clearly established right. *See Morgan v. Swanson,* 610 F.3d 877, 882 (5th Cir. 2010), *rev'd on other grounds,* 628 F.3d 705 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

"Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to show that (1) the official violated a . . . constitutional right . . . (2) [that] was 'clearly established' at the time." *Bevill v. Fletcher,* 26 F.4th 270, 275 (5th Cir. 2022) (citations and quotations omitted); *see also Wilson v. Layne,* 526 U.S. 603, 609 (1999). A court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson,* 526 U.S. at 609 (quoting *Conn v. Gabbert,* 526 U.S. 286, 290 (1999)). "[T]he burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002).

The first prong of the qualified immunity analysis requires that the Court determine whether Plaintiff "alleged the deprivation of an actual constitutional right." *Wilson,* 526 U.S. at 609. "[T]he defendant's conduct cannot constitute a violation of a clearly established law if, on the plaintiff's version of the facts, there is no violation at all." *Johnson v. Johnson,* 385 F.3d 505, 525 (5th Cir. 2004). Here, Plaintiff alleges that Defendant deprived her of her First Amendment right to free speech when Defendant highlighted previous statements made by Plaintiff.

The First Amendment right to free speech includes not only the affirmative right to speak but also the right to be free from retaliation by a public official for the exercise of that right. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 574 (1968). A plaintiff must plead (1) she engaged in protected speech, (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such speech, and (3) a causal relationship exists between plaintiff's speech and defendant's alleged retaliatory action. *Keenan v. Tejada,* 290 U.S. 252, 258 (5th Cir. 2002) (citations omitted). Plaintiff's claims fail to satisfy any of these requirements.

2. **Retaliatory speech by a public official does not constitute cognizable retaliation under the First Amendment.**

Plaintiff strives mightily to cast herself as a private citizen when she wrote her 2023 dissertation in support of her Doctorate of Education "expressing her personal views about the role of the Alamo." Dkt. 19 ¶ 5. Yet, in her dissertation, Plaintiff specifically indicates that "one of the main purposes of the study is to help inform future programming at the Alamo," Ex. 1 at 21, "the goal was to determine how the practices and strategies . . . can be applied to the Alamo," Ex. 1 at 26, and "the findings and recommendations are intended to help inform the implementation of the $300 million Alamo redevelopment plan currently underway in San Antonio, Texas. Ex. 1 at 66. Plaintiff, like Defendant, is a public figure. Plaintiff, then Executive Director of the Alamo Trust, was hired to implement the Alamo Plan which is the "ongoing effort to restore dignity and reverence to this sacred site." Dkt. 19 ¶¶ 23, 21; *see also* https://www.thealamo.org/support/alamo-plan (last viewed January 12, 2026). Defendant is the duly elected Lieutenant Governor of the State of Texas. However, whether Plaintiff is a public or private figure is ultimately irrelevant because, as discussed below, the so-called retaliatory speech she complains of does not support a First Amendment claim.

When a public official allegedly responds to speech with his own speech, "[t]he nature of the alleged retaliatory acts has particular significance" because the "public official's own First Amendment rights are implicated." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000). "[L]iability will attach only if the public officials . . . imposed or threatened official action." *Noonan v. Kane,* No. 20-3610, 2022 WL 2702153, at *1 (3d Cir. July 12, 2022).[1] "[S]trongly urging or influencing, but not 'coercing' a third party to take adverse action . . . d[oes] not violate plaintiff's constitutional rights." *McLaughlin v. Watson,* 271 F.3d 566, 573 (3d Cir. 2001). Such standard strikes the appropriate balance between "the citizen's right to exercise his First Amendment rights and the public official's personal First Amendment rights, as well as his duty to the public to speak out about matters of public concern." *Suarez,* 202 F.3d at 688.

"[C]riticism, an investigation (or an attempt to start one), and false accusations" are "harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman,* 174 F.3d 498, 512 (5th Cir. 1999); *accord Matherne v. Larpenter,* 216 F.3d 1079 (5th Cir. 2000). So too here. Plaintiff alleges that Defendant—the Lieutenant Governor of the State of Texas, Dkt. 19 ¶¶ 72, 82—retaliated against her for her

---

[1] *See also R.C. Maxwell Co. v. Borough of New Hope,* 735 F.2d 85, 89 (3d Cir. 1984) (holding that borough sent letters to landowner encouraging, but not threatening, intimidating, or coercing, the landlord terminate its leases with a billboard owner did not violate the billboard owner's First Amendment rights where the landowner terminated the leases in order to curry favor with the borough); *Hammerhead Enters., Inc. v. Brezenoff,* 707 F.2d, 33, 38-39 (2d Cir. 1983) (holding that public official who sent letters to retail stores requesting they refrain from selling a board game did not violate the board game manufacturer's First Amendment rights because the public official's letters did not intimate some form of punishment or adverse regulatory action would follow the failure to accede to request); *Black Farmers and Agriculturalists Ass'n, Inc. v. Hood,* No. 3:13-CV-763-TSL, 2014 WL 935147, at *11-12 (S.D. Miss., March 10, 2014) (holding that Attorney General of Mississippi did not violate associations First Amendment rights where he encouraged—but did not threaten or coerce—citizens to not join association because of fraudulent practices).

exercise of free speech through his own exercise of free speech. Plaintiff alleges (1) Defendant sent a letter to the Alamo Trust and Commissioner Buckingham that makes clear "Plaintiff's termination was based solely on [Plaintiff's] citizen speech, *id.* at ¶ 60, (2) Defendant "directed and coerced the Board Members of the Alamo Trust and Foundation to terminate [Plaintiff]", *id.* at ¶ 82, and (3) Defendant "directed and coerced the Board Members of the Alamo Trust and Foundation to withdraw [Plaintiff's] severance offer." *Id.* at 83. Because the alleged retaliation took the form of speech on matters of public concern (and thus implicates Lt. Governor Patrick's own rights to free speech), the Complaint does not properly allege a First Amendment retaliation claim because it does not plausibly allege that the Lt. Governor's conduct "could be reasonably understood to convey a threat of adverse action in order to punish or suppress the plaintiff's speech" when the complained-of speech conclusively proves otherwise. *See* Ex. 3.[2] Notably, the letter sent by the Lt. Governor does not include any threats, direct or implied, of any punishment, sanction, or adverse regulatory action. *See id.*

### 3. Plaintiff has not—and cannot—plead deprivation of a "clearly established" right.

As set forth above, Plaintiff has failed to allege that Defendant deprived her of an actual constitutional right. Even assuming she had established deprivation, she has not—and cannot—plead that the right was "clearly established" at the time of the alleged deprivation.

---

[2] On a motion to dismiss, the "court may also consider attachments that were explicitly referenced in the complaint." *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 447 (W.D. Tex. 2013); *see also Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 933 (N.D. Tex. 1995) ("The complaint is deemed to include … any document incorporated in it by reference."). Plaintiff specifically referenced Defendant's letter sent to the Alamo Trust and Commissioner Buckingham. Dkt. 19 ¶ 60. Accordingly, documents referenced in the Plaintiff's Complaint (Dkt. 1) are attached hereto as Exhibit 1, but the inclusion does not convert this motion to dismiss into a summary judgment motion.

A right is clearly established if, "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018) (internal citations omitted). The pleading standard is heightened in qualified immunity cases and "requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms,* 341 F.3d 385, 388 (5th Cir. 2003); *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (per curiam) ("The dispositive question is whether the violative nature of the *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (citation and internal quotation marks omitted). The dispositive question is not whether the right was clearly established as a general matter, but whether "every reasonable official" would have understood, in the precise circumstances confronted, that the conduct was unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Although overcoming qualified immunity does not require a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Hanks v. Rogers,* 853 F.3d 738, 746-47 (5th Cir. 2017).

Here, Plaintiff has failed to plead any facts showing that Defendant violated a clearly established right. At most, Plaintiff has alleged that Defendant spoke out about some statements made by Plaintiff in her dissertation indicating her inability to accomplish all she desired in light of the current political environment. Lt. Governor Patrick undoubtedly has a First Amendment right to speak about issues wherein the Texas Legislature has committed to hundreds of millions of dollars in funding. No Fifth Circuit or Supreme Court case holds that the type of conduct alleged

in this case was unconstitutional, much less "beyond debate" at the time. *See Wesby,* 583 U.S. at 63. Nor does any binding precedent provide "fair warning" that the conduct alleged in the Complaint would violate the Constitution. *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004).

Notwithstanding the fact that Alamo Trust, Inc. is a properly formed, statutorily defined non-profit entity that would exist with or without funding from the Texas legislature, Plaintiff cursorily asserts that it is a state actor. Dkt. 19 ¶ 88. If she is considered a public employee, as alleged by Plaintiff, making statements pursuant to her official duties, she is not speaking as a citizen for First Amendment purposes, and the Constitution does not insulate her communications from employer discipline. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). If Plaintiff is considered a private employee, as she claims, Lt. Governor Patrick could not have had anything to do with her alleged constructive resignation.

Assuming she is a government employee—which she is not—then "[t]he test for evaluating a First Amendment retaliation claim by government employees has five elements." *Wetherbe v. Texas Tech Univ. Sys.,* 138 F.4th 296, 302 (5th Cir. 2025). Initially, the threshold inquiry is whether the employee "spoke as a citizen or instead made 'statements pursuant to [her] official duties.'" *Id.* at 306. If the employee's speech was made pursuant to her official duties, "it is unprotected by the First Amendment." *Id.* Here, "one of the main purposes of [Plaintiff's study was] to help inform future programming at the Alamo," Ex. 1 at 21, "the findings and recommendations [were] intended to help inform implementation of the $300 million Alamo redevelopment plan," Ex. 1 at 66, and the protocol "was tested with members of the Alamo's Educator Advisory Panel before being used." Ex. 1 at 72. Moreover, while pointing out that she was the Executive Director of the Alamo Trust, Plaintiff [indicated that she "had to remain open

to the findings and the ways they may challenge [her] own beliefs and views." Ex. 1 at 80-81. Plaintiff's own words indicate her study was being conducted to advance the interests of the Alamo Project with the potential that the findings "may" change her own personal views.

In the event Plaintiff was speaking as a citizen, she must also prove that (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Wetherbe,* 138 F.4th at 303. Even if she was speaking as a private citizen, her claim fails. Plaintiff's own factually incorrect admission that "the GLO calls the shots at the Alamo," is fatal to her claim against Lt. Governor Patrick. *See supra* at pp. 4-5. Plaintiff has not, and indeed cannot, point to any authority indicating he had any authority over the decisions made by Alamo Trust, Plaintiff's employer. As such, she could not have suffered an adverse employment decision *because of* any statements made by Lt. Governor Patrick.

Accordingly, Lt. Governor Patrick is entitled to qualified immunity, both because Plaintiff has failed to plausibly allege a constitutional violation and because the law was not clearly established under the circumstances. *Cole v. Carson,* 935 F.3d 444, 451 (5th Cir. 2019) (an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time").

### III.  Plaintiff has failed to state a claim for conspiracy under § 1983.

The absence of a violation of the First Amendment necessarily bars Plaintiff's related conspiracy claim. If qualified immunity bars Plaintiff's First Amendment claim, the Court need not consider whether a conspiracy existed to commit that alleged violation. *See Hale v. Townley,* 45 F.3d 914, 921 (5th Cir. 1995); *Bevill v. Fletcher,* 26 F.4th 270, 274-75 (5th Cir. 2022). A Section 1983 conspiracy claim is not an independent cause of action; it requires proof of an underlying

constitutional violation. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994). Because, as shown herein, Lt. Governor Patrick is entitled to qualified immunity on the underlying § 1983 claim (Count 1), he is likewise entitled to qualified immunity on the conspiracy claim (Count 2).

Alternatively, were the Court to find there was an underlying constitutional violation, Defendant is nonetheless entitled to qualified immunity from Plaintiff's claims because his actions were objectively reasonable. In Section 1983 cases alleging a conspiracy between public officials and private individuals, qualified immunity remains fully available to the government official. *Hill v. City of Seven Points,* No. 00-41436, 2002 WL 243261, at *8 (5th Cir. Jan. 17, 2022). As the Fifth Circuit explained, courts must not permit the mere assertion of a conspiracy to bypass the qualified immunity defense because doing so would expose officials to discovery and trial "even where the official action was objectively reasonable." *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272 (5th Cir. 1992). That result, the court cautioned, would threaten to "destroy[] the efficacy of the defense." *Id.* To avoid such a result, the proper analysis at the motion-to-dismiss stage requires courts to first determine whether the alleged state action was objectively reasonable. *Id.* Only if it was not does the inquiry proceed to consider whether the official acted pursuant to a conspiracy. Applying this standard, the claims against Defendant must be dismissed.

To the extent there is any doubt as to the reasonableness of Defendant's action, Plaintiff's own Amended Complaint underscores the seriousness of the issue: The Texas Legislature has allocated more than $400 million dollars in funding (Dkt. 19 ¶ 26) to "honor the individuals whose lives were lost at the Alamo. Dkt. 19 ¶ 17; Tex. Nat. Res. Code § 31.450(a)(2). As the duly elected Lt. Governor, Defendant has a vested interest in ensuring "$400 million in state funds [tells] what

the story [of the Alamo] is really all about, and that's the fight for liberty and freedom." Dtk. 19 ¶ 28. Once it became publicly known that Plaintiff had previously indicated her plan for the Alamo "may not be possible at this time" and the resulting "negative consequences for the $300 million Alamo Plan as well as [her] job" caused by her dissertation, Defendant had the unquestionable right, if not an obligation, to point out such statements to the Alamo Trust. *See* Ex. 1 at 80; *see also Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995) ("[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes."). As such, Plaintiff's conspiracy claim fails.

## CONCLUSION

Lt. Governor Patrick has an undeniable right to opine on issues related to appropriations allocated by the Texas legislature. By her own admission, Plaintiff indicated an inability to do her job, and Plaintiff cannot plausibly allege any set of facts to indicate the Lt. Governor had any role in her resignation. Plaintiff has failed to establish a violation of the First Amendment to overcome qualified immunity or even establish standing to assert her claims in the first place.

WHEREFORE, PREMISES CONSIDERED, Defendant, Texas Lt. Gov. Dan Patrick, respectfully requests that this Court grant his Motion to Dismiss thereby dismissing with prejudice all claims asserted by Plaintiff in her First Amended Complaint against him and for all other relief, both at law and in equity, to which he may show himself to be justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ William H. Farrell
WILLIAM H. FARRELL
Deputy Chief, General Litigation Division
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
(512) 979-5561 | FAX: (512) 320-0667
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

***Attorneys for Defendant,
Texas Lt. Gov. Dan Patrick***

## CERTIFICATE OF SERVICE

I certify that on March 3, 2026, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ William H. Farrell
WILLIAM H. FARRELL
Deputy Chief, General Litigation Division

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint