THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KATE ROGERS, ED.D. | § | |
|     *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL NO. 5:25-CV-1500 |
| | § | |
| ALAMO TRUST, INC., DAN PATRICK, | § | |
| DAWN BUCKINGHAM, REMEMBER | § | |
| THE ALAMO FOUNDATION, WELCOME | § | |
| WILSON, JR., and ESPERANZA ANDRADE | § | |
|     *Defendants.* | § | |

---

**DEFENDANTS ALAMO TRUST, INC., REMEMBER THE ALAMO FOUNDATION,
WELCOME WILSON, JR. AND ESPERANZA ANDRADE'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ............................................................................................... 12

ARGUMENTS .................................................................................................................. 12

    A.    Plaintiff's 42 U.S.C. § 1983 Claims Should Be Dismissed Because They Cannot Show that ATI, RTAF, Wilson and/or Andrade are Persons Acting Under Color Of State Law ................................................................................................... 12

    B.    Even if the ATI, RTAF, Wilson and Andrade Could be Considered "State Actors", Plaintiff Cannot Support a Claim for First Amendment Free Speech Retaliation Under 42 U.S. C. § 1983 ....................................................................... 21

    C.    If Wilson and Andrade are Found to Be State Actors, Both are Protected by Qualified Immunity ..................................................................................... 26

    D.    If ATI, RTAF, Wilson and Andrade are Found to Be State Actors, Sovereign Immunity Bars Rogers' Claims Against Them ............................................... 28

CONCLUSION ................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)................................... 28, 29

*Anderson v. Valdez,* 845 F.3d 580, 590 (5th Cir. 2016) ...................................................... 21, 24, 25

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ....................................................... 29

*Bd. of Cnty. Comm'rs v. Umbehr,* 518 U.S. 668, 684–85, (1996) ............................................. 21

*Behrghundi v. Save Our City-Mart, Tex.,* 2019 WL 7037939 at *4 (W.D. Tex. Dec. 20, 2019)... 13

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ....................................................... 12

*Bevill v. Fletcher,* 26 F.4th 270, 275 (5th Cir. 2022) ....................................................... 27

*Bosman v. Child Assessment Ctr.,* 2025 WL 1019964 at *2-3 (S.D. Tex. April 3, 2025) .......15, 16

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 (Tex. 2015) ................................. 28

*Cornish v. Corr. Servs. Corp*. 402 F.3d 545, 549 (5th Cir. 2005) ........................................... 13, 20

*Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015) .................................................. 21

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 n. 8 (1978) .................................................. 15

*Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006) .................................................... 23, 25

*Gibson v. Kilpatrick,* 773 F.3d 661, 670 (5th Cir. 2014) ............................................. 25

*Hall v. Tex. Comm'n on Law Enf't*, 685 Fed. App'x 337, 340 (5th Cir. 2017) ........................... 29

*Hebrew v. Houston Media Source*, 453 Fed. Appx. 49, 481 (5th Cir. 2011) ............................... 13

*Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2008) ............................................ 12

*Lane v. Franks,* 134 S.Ct. 2369, 2379 (2014) .............................................................. 23

*Lee v. Whispering Oaks Homeowners Assn.*, 797 F.Supp.2d 740, 755 (W.D. Tex. 2011) ........... 26

*Lowery v. Mills,* 157 F.4th 729, 741 (5th Cir. Oct. 31, 2025) ....................................................... 23

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ........................................................... 13

ii

*Manhattan Cmty Access Corp. v. Helleck*, 587 U.S. 802, 809 (2019) ................................... 13, 20

*Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) ..... 28

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ........................................................ 26

*Pearson v. Shriner's Hospitals for Children*, 133 F.4[th] 433, 446-447 (5th Cir. 2025) ...... 26, 27, 28

*Rendell Baker v. Kohn,* 457 U.S. 830, 841 (1982) ................................................. 16, 20

*Southland Securities Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 361 ...................... 12, 18
   (5th Cir. 2004)

*Waller v. Hanlon*, 922 F.3d 590, 603-04 (5th Cir. 2019) ............................................. 30

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ................................... 14

*Williams on Behalf of J.R. v. Reeves,* 954 F.3d 729, 737 (5th Cir. 2020) ...................... 29

*Wren v. Midwestern State Univ.* 2019 WL 3099408, *6 (N.D. Tex. June 25, 2019) ................... 14

*Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) ............................. 26

## Statutes

Internal Revenue Code §509(a)(3) ........................................................................ 4

Tex. Nat. Res. Code § 31.451(a), (b) & (d) ............................................................ 2

42 U.S.C. 1983 ...................................................... 1, 2, 11, 12, 13, 14, 16, 21, 25, 26

## Rules

Fed. R. Civ. P. 12 ...................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................... 12

iii

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Alamo Trust, Inc. ("ATI"), Remember the Alamo Foundation ("RTAF"), Welcome Wilson, Jr. ("Wilson") and Esperanza "Hope" Andrade ("Andrade") move to dismiss the First Amended Complaint[1] ("Amended Complaint") of Plaintiff Kate Rogers ("Plaintiff" or "Rogers").

## I.    INTRODUCTION

This case stems from Rogers' resignation as President and Chief Executive Officer of ATI, a Texas non-profit organization that contracts with the Texas General Land Office to manage the day-to-day operations of the Alamo. Rogers alleges that ATI, RTAF (ATI's private fundraising arm), Wilson, and Andrade are all state actors who conspired with Texas General Land Office Commissioner Dawn Buckingham, M.D. ("Buckingham") and Lieutenant Governor of Texas Dan Patrick ("Lt. Governor Patrick") to force Rogers' resignation because of controversial statements she had made in her Global EdD graduate school dissertation while at the University of Southern California ("USC") Rossier School of Education. Rogers brings claims under 42 U.S.C. § 1983, alleging that Defendants, individually and in conspiracy with each other, violated her First Amendment free speech rights by forcing her resignation in retaliation for the statements made in her dissertation.

Rogers' claims fail because ATI, RTAF, Wilson and Andrade are not state actors given that ATI and RTAF are 501(c)(3) non-profits acting independently of the GLO and the State of Texas, and Wilson and Andrade are voluntary Board members of both non-profit organizations.[2]  Rogers' claims further fail because even if Defendants could be considered state actors for purposes of a §1983 retaliation claim, Rogers cannot prove the elements of a First Amendment free speech retaliation claim because (a) she resigned and did not suffer an adverse employment action when she resigned, and (b)

---

[1] Defendants had previously filed a Motion to Dismiss Plaintiff's Original Complaint on February 3, 2026.  Plaintiff filed an Amended Complaint on February 27, 2026, effectively mooting the Motion to Dismiss.

[2] When Andrade was appointed to replace Rogers as President and CEO in October, 2025, she no longer was a voting member of the ATI and RTAF Boards. Andrade now serves as Ex Officio on both of these Boards.

1

she cannot show she was acting as a private citizen when making the statements in her dissertation. Rogers' statements at the time were made within her capacity and while she was holding herself out as Executive Director of ATI.  Rogers' statements were about her position with ATI and are not subject to First Amendment protection under the law.  Finally, even if Defendants are found to be state actors, they are protected by qualified immunity and sovereign immunity.  Thus, Rogers fails to state a claim against Defendants upon which relief can be granted for §1983 retaliation and conspiracy, and both claims should be dismissed.

## II.    BACKGROUND

### *Preservation and Management of the Alamo*

Since the Battle of the Alamo in 1836, the Alamo has stood as the Shrine to Texas Liberty and a memorial to the spirit of the brave Alamo defenders. The State of Texas has taken great care to preserve the Alamo, which it owns along with the surrounding land and buildings that it leases from the City of San Antonio. In 2011, the Texas Legislature and Governor Rick Perry designated the Texas General Land Office ("GLO") as the custodian of the Alamo. By statute, the Alamo is under the exclusive jurisdiction of the GLO, and all powers and duties related to it are "vested solely in the [GLO]." Tex. Nat. Resource Code § 31.451(a) & (b). The same statute gives the GLO the right to "partner with a qualifying nonprofit organization" to, among other things, "provide services or other benefits for the preservation and maintenance of the Alamo." *Id.* at 31.451(d). From 2011 to 2015, the GLO contracted with the Daughters of the Republic of Texas ("DRT") to manage and operate the Alamo. On July 11, 2015, the GLO entered into a management contract with Alamo Endowment, a Texas non-profit which later assigned its rights and responsibilities under the contract to the Alamo Complex Management, also a Texas non-profit whose name was changed to Alamo Trust, Inc. on October 23, 2017.  Additionally, the GLO entered into a

2

Cooperative Agreement[3] with the Alamo Endowment and the City of San Antonio on November 17, 2015 in which they agreed to tell the entire story of the Alamo as part of the settlement of San Antonio and the Spanish Colonial Missions, including the diverse cultures that contributed to the Alamo.  They also agreed to tell the Story of the Battle of the Alamo and its incredible impact on the State of Texas, the United States and the international community.  The GLO currently contracts with ATI to manage the day-to-day operations and staff along with private fundraising efforts at the Alamo pursuant to a certain Amended and Restated Management Services Contract ("Management Contract") mostly recently executed on December 19, 2022.  *See* Management Services Contract, attached as Exhibit A.  The Management Contract was in place at the time of Rogers' resignation on October 23, 2025.

### *Creation and Management of ATI and RTAF*

Defendant ATI is a stand-alone 501(c)(3) non-profit Texas corporation, separate and distinct from the GLO. ATI is an independent contractor to the GLO under the Management Contract, and its employees are employees of ATI – not the GLO.  *See* Exhibit A at ¶¶ 3.04 & 3.05. The ATI Board of Directors ("ATI Board") has five (5) voting Board Members and two (2) non-voting advisory members, who all serve voluntarily and without pay.[4]  *See* First Amended and Restated Bylaws of the Alamo Trust, Inc., attached as Exhibit B ¶ 1.02(e)-(f) ATI Bylaws.  No voting member of the ATI is employed or appointed by the GLO.  Under ATI Bylaws, the GLO has the right to appoint one (1) non-voting advisory member to the ATI Board. *See id.* § 3.09(a). The ATI Board has the exclusive authority to "designate an Executive Director (ED) or Chief Executive Officer ("CEO")" to oversee operations of ATI, including overseeing and managing the

---

[3] The Cooperative Agreement was assigned to ATI on August 12, 2019.

[4] *See* https://www.thealamo.org/fileadmin/assets/about/governance/bylaws_ati_fifth_06-07-2023f_executed.pdf

employees of ATI. *See* Exhibit B § 4.06.  The ATI Board also has the exclusive power to "remove the ED/CEO (and any officers and agents designated by the ED/CEO) at any time with or without cause. *Id.*  Nowhere in the Management Contract or the ATI Bylaws do they give authority to Lt. Governor Patrick, Commissioner Buckingham, or the GLO to terminate the ATI CEO.

Defendant Welcome Wilson, Jr. is the current Chairman of the ATI Board and has served on that Board since 2015.  Defendant Esperanza "Hope" Andrade has served on the ATI Board since 2015 and was serving as Treasurer of the ATI Board, until she was appointed President and CEO of ATI on October 24, 2025, following Rogers' resignation.  ATI is an entirely independent entity with its own tax-identification number, a team of executives and about two hundred (200) employees who work directly for ATI.  None of the employees, including Rogers, work for the State of Texas or the GLO and all are considered at-will employees.  Lt. Governor Patrick, Commissioner Buckingham and/or the GLO are not authorized to hire, fire, promote, or discipline any ATI employee.

Defendant RTAF was created by ATI and is classified as a non-profit, Type I supporting organization of ATI under IRC Section 509(a)(3) and its sole function is to raise private funds in support of the Alamo and the Alamo Plan described more fully below.  It essentially serves as the fundraising arm of ATI.[5]  RTAF's sole source of funding is from private donations by individuals, foundations and companies, and RTAF receives no funding from any governmental sources.  RTAF is not a party to any contract with the GLO.  RTAF's Board of Directors consists of twelve (12) members, all private individuals who were initially chosen by Rogers to serve on the RTAF Board. *See* Exhibit C ¶ 3.02.  Mark M. Johnson serves as the Chairman of the RTAF Board. Similar to the ATI Board, all members are voluntary and unpaid.  There are no elected officials or representatives

---

[5] *See* https://www.thealamo.org/fileadmin/assets/about/governance/bylaws_rtaf_fourth_07-25-2024f_executed.pdf; *see* Exhibit C ¶ 1.02(b) RTAF Bylaws.

4

of the GLO or any other state agency on the RTAF Board.   Further, RTAF has zero (0) employees and did not employ Rogers. Rogers was the Executive Director/CEO of RTAF, as is customary for the formation of a non-profit organization; however, she was only an employee of ATI.

***The 2015 Alamo Plan***

As stated above, in 2015, the GLO, the Alamo Endowment, and the City of San Antonio signed a Cooperative Agreement to create a master plan to preserve and protect the Alamo (the "Alamo Plan").  The Plan's objectives, as amended, are to (1) preserve the 300-year-old Alamo Church and Long Barrack; (2) recapture the original mission site and battlefield footprint; and (3) create a world-class Visitor Center and Museum to tell the full history of the site.  Amended Complaint ¶21.  Since 2015, the Texas Legislature had appropriated multiple rounds of funding – close to $600 million dollars – to the GLO to be used to preserve and maintain the Alamo and to develop and implement the Alamo Plan. Lt. Governor Patrick was instrumental in advocating for the appropriation of such funds to the GLO for the preservation of the Alamo and implementation of the Alamo Plan.

***The Hiring of Kate Rogers as Executive Director of ATI***

In early 2021, ATI convened a search committee, led by Andrade to search for a new Executive Director for ATI.  After an extensive search, ATI hired Kate Rogers to serve in this capacity.  *See* Amended Complaint ¶ 23.  Neither the GLO, the former Land Commissioner nor Lt. Governor Patrick hired Rogers.  Throughout her employment with ATI, Rogers was an at-will employee of ATI.  Rogers never signed an employment contract with ATI and reported directly to the ATI Board throughout her entire employment.  Contrary to her allegations in her Amended Complaint, she never reported as an employee to Hector Valle, senior deputy director of the GLO. Rogers received a paycheck from ATI via its Professional Employer Organization ("PEO"), had

tax withholdings and payroll taxes paid on her behalf and was listed on the workers compensation plan of ATI. She never received a paycheck from RTAF. Wilson, Andrade and the ATI Board continued their support of Rogers throughout her employment, including championing her for raises and bonuses throughout her tenure. In 2025, Rogers requested her title be changed to President and CEO and asked for a bonus structure tied to her fundraising efforts, which the ATI Board approved largely due to the efforts by Andrade.

*Kate Rogers Resignation from ATI*

On Wednesday, October 22, 2025, Rogers attended a retirement celebration for a colleague with Andrade and two (2) other ATI executives after work. Shortly after they arrived, Rogers received a phone call on her cell. At the time, neither Andrade nor the two (2) other executives knew who the call was from or what the call was about. After the call, Rogers was visibly upset and stated that she had spoken with Lt. Governor Patrick and that she was going to resign from her position at ATI. Andrade tried to get information as to what had happened, but Rogers was upset and unclear about what exactly transpired on the call. She mentioned that she had made some statements in her dissertation for her Doctorate degree[6] that were critical of the Texas Legislature and other issues related to the Alamo. Rogers repeatedly said that "it was done" and she was resigning. Andrade repeatedly asked Rogers what was going on, but Rogers remained adamant and kept saying "It's done. It's done." Rogers rejected every effort by Andrade to discuss the situation more fully that evening and not resign. In fact, Andrade suggested that Rogers come back to her home to discuss what had happened and to not rush to resign from ATI. Instead, Rogers

---

[6] Plaintiff had received her Doctorate in Global Education from the USC Rossier School of Education in 2023. Rogers emphasizes in her Amended Complaint that she began her doctoral studies in 2020 before she became Executive Director of ATI; but it is undisputed that she published her dissertation and was awarded her doctorate in 2023, almost two years after becoming Executive Director of ATI.

insisted to Andrade to "get her a good severance (a year)," which Andrade said she would try to do for her.

The next morning, on Thursday, October 23, 2025, Andrade spoke with Lt. Governor Patrick who explained that Rogers had made highly critical statements of the Texas Legislature – the very Legislature that had allocated close to $600 million to the GLO to implement the Alamo Plan – as well as other controversial comments regarding the Alamo in her graduate dissertation, which Rogers published in 2023 while Executive Director of ATI. Andrade told Lt. Gov. Patrick that Rogers had stated she was resigning and that Andrade would follow up with her. At no time did Lt. Governor Patrick ever direct Andrade, Wilson or the ATI Board to fire Rogers or to give her an ultimatum that if she did not resign, she would be fired. Lt. Governor Patrick merely conveyed that he suggested to Rogers that she resign based on the troubling statements in her dissertation. Lt. Governor Patrick followed up his call with Andrade with a letter to the ATI Board at 12:29 p.m. and copied Commissioner Buckingham and Rogers. *See* Exhibit D. He also posted the letter on X and his official website. *Id.*; Amended Complaint ¶ 50. In the letter, Lt. Governor Patrick included the actual pages of Rogers' dissertation and stated that her writings were "incompatible with the telling of the history of the battle of the Alamo" and the "main focus of Alamo history should be about the battle. *Id.* Of course, the entire story of the Alamo will be told, but the overriding emphasis should be on the '13 Days of Glory,' as nearly 200 men gave their lives to defend liberty and freedom for Texas." *Id.* He closed the letter stating he suggested Rogers offer her resignation before the Board considers the matter, which by that point Rogers had already committed to do.[7]

---

[7] Rogers also tries to link her alleged firing to Commissioner Buckingham's criticism on October 14, 2025, of a post made by the Alamo's social media account regarding Indigenous People's Day. *See* Amended Complaint ¶ 52. Commissioner Buckingham sent a letter to the ATI Board bringing it to their attention along with some other issues, including budgetary concerns and the script for the upcoming Alamo Visitor Center & Museum ("VCM"). *See*

Andrade also spoke with Rogers on the morning of October 23, 2025, and Rogers was insistent on resigning and again asked for a "good" severance. At 12:52p.m., Rogers texted Andrade and stated that she had seen the post by Lt. Gov. Patrick and said she was resigning. *See* Exhibit E, Rogers Texts to Andrade Oct. 22-24, 2025. At 4:07 p.m., on October 23, 2025, Rogers sent her resignation letter to ATI Board Chair Wilson and Andrade in which she asked for two (2) years severance. *See* Exhibit F, Rogers Resignation Letter. The ATI Board convened shortly thereafter and accepted Rogers' resignation. *See* Exhibit E.

Andrade conveyed the ATI Board's acceptance of her resignation to Rogers via text, who again asked about her severance package. *See* Exhibit F. Rogers never asked the ATI Board for anything other than acceptance of her resignation and severance package. The ATI Board offered to give Rogers severance and sent her a separation agreement by the next afternoon on Thursday, October 24, 2025. Rogers told Andrade that she would accept the severance and would review the Separation Agreement ("Separation Agreement"). Indeed, Andrade kept her word to achieve securing Rogers a severance package.

***Rogers' Post-Resignation Negotiations***

Thereafter, Rogers began additional negotiations, requesting more money and requesting changes to the wording of the confidentiality and non-disparagement provisions of the Separation Agreement. Given the critical statements in her dissertation, and the fact the Texas Legislature

---

Amended Complaint ¶ 53. But Commissioner Buckingham's October 14 letter had nothing to do with Roger's resignation on October 23. The ATI Board had already addressed Buckingham's issues raised in her letter. *See* Amended Complaint ¶ 55-56. Rogers has not pled any allegations that Commissioner Buckingham called for her resignation to the ATI Board as a result of the Indigenous People's post on social media or with anything related to her dissertation. Commissioner Buckingham posted on X the day after Rogers' resignation commending Lt. Governor Patrick's swift action at the Alamo, but again there are no allegations that Commissioner Buckingham had anything to do with Rogers' resignation or ATI's acceptance of her resignation. Rogers new allegations that the GLO's response to a Texas Public Information Act Request shows that the GLO was in communications with ATI regarding Rogers between October 13, 2025, and November 1, 2025, still do not show that Commissioner Buckingham had anything to with Rogers' resignation or the withdrawal of the Separation Agreement.

had allocated a significant sum for the execution of the Alamo Plan, the ATI Board proposed confidentiality and non-disparagement clauses as related to any elected officials, or state and local governmental bodies affiliated with the Alamo. Rogers initially would not agree to not make any derogatory or negative comments regarding any elected officials or state and local governmental bodies affiliated with the Alamo. This was also contrary to her insistence on these types of provisions in any prior separation agreements that she had offered to other departing ATI employees under her tenure. On Thursday, October 30, 2025, Rogers finally agreed to the confidentiality and non-disparagement clause language that she points out in her Amended Complaint. Unbeknownst to Defendants, however, Rogers had already sat for an interview with Texas Monthly that was published the same day that she conveyed she would agree to those confidentiality and non-disparagement provisions. *See* Amended Complaint ¶ 68; https://www.texasmonthly.com/news-politics/alamo-trust-kate-rogers-ouster. This interview clearly violated any confidentiality or non-disparagement obligations she had already agreed to in exchange for her severance package.

Rogers' duplicitous actions showed the ATI Board that she never had any intention of complying with the Separation Agreement and its confidentiality and non-disparagement provisions. Indeed, she wanted to participate in the negative article while simultaneously receiving a significant severance package and payment. Because of Rogers' dishonest dealings, the ATI Board withdrew the Separation Agreement immediately. Rogers does not make any allegations that either Commissioner Buckingham or Lt. Governor Patrick were involved in the withdrawal of the Separation Agreement. At no time did Lt. Governor Patrick or Commissioner Buckingham direct ATI in any way to withdraw the severance prior to the withdrawal. Any attempt to say otherwise is false and a weak attempt to support a conspiracy claim where there is none.

9

***Rogers Biting the Hand That Fed the Alamo Plan***

With respect to Rogers' free speech allegations related to her dissertation, Rogers argues she was merely a private citizen/graduate student making comments on issues related to education in the State of Texas in her 100+ page dissertation.  But make no mistake, she was making her remarks as the Executive Director of Alamo Trust, Inc.  *See* Exhibit D.  In her dissertation, she highly criticized the Texas Legislature and the bills that had been passed in the prior legislative session regarding education, which she said was not the purview of the Texas Legislature. *Id.* Rogers then clearly references being "Executive Director of the Alamo Trust" and discusses Commissioner Buckingham, Lt. Governor Patrick, the money allocated to the Alamo Plan by the Legislature in 2021, and her working on a major legislative appropriation for the 2023 session for the Alamo Plan redevelopment process for which she has been charged with implementing.  *Id.* She then discusses balancing the agenda of the GLO Commissioner and Lieutenant Governor with the local San Antonio politicians who she claimed do not agree with the State's emphasis on the Battle of the Alamo as the focus of the future Alamo Visitor Center and Museum. *Id.*  She closed that section of her dissertation stating that she "had to be careful with [her] study and its implications as it could have negative consequences for the $300 million Alamo Plan and her job." *Id.*

Additionally, Rogers participated in a March 2023 profile on the USC Rossier School of Education School website that discussed at length her role as the Executive Director of the Alamo, her dissertation and controversy surrounding the Alamo Plan."[8]  Rogers argues that her dissertation was intended to define best practices for experiential learning offered for educators at museums and historic sites none of which included the Alamo.  *See* Amended Complaint ¶ 47.  Again, this

---

[8] https://rossier.usc.edu/news-insights/news/global-edd-student-commits-retelling-story-alamo-good-bad-and-ugly

contradicts her own words in her dissertation in which she stated the "biggest dilemma for me as a researcher and the actual instrument in this qualitative study had to do with my own political views and my current environment", referring to being the Executive Director of the Alamo.[9] Amended Complaint ¶ 48.

Rogers' statements in her dissertation ultimately contradicted and undermined the long-standing agreement among the parties of the Alamo Plan to emphasize the Battle of the Alamo and the individuals whose lives were lost at the Alamo and made the ultimate sacrifice for liberty and freedom for this great State. Further, her statements also belied the fact that the GLO, ATI and City of San Antonio had agreed since 2015 (and long before she became Executive Director of the Alamo) to tell the entire story and the history of the Alamo. Rogers was not some beacon of reconciliation in the telling of the Alamo, but merely a steward of what had already been long agreed upon by the GLO, ATI and the City of San Antonio.

Rogers knew she was playing with fire when she was highly critical of those actors she knew were absolutely vital to the future success of the Alamo Plan, the Alamo and her job. This is evidenced by her reaction to repeat "It's over. It's over. I have to resign," immediately upon being confronted with her own controversial statements. Rogers knew full well that she had sealed her own fate. Then she tried to extract a six-figure severance package through duplicity by stating she would agree to confidentiality and non-disparagement provisions while simultaneously violating those provisions in sitting for a scathing Texas Monthly article that attacked everyone associated with the Alamo. Neither her voluntary resignation nor the ATI Board's withdrawal of the Separation Agreement is in any way actionable. For the reasons stated below, Rogers fails to state a claim for retaliation or conspiracy pursuant to 42 U.S.C. § 1983 against ATI, RTAF, Wilson

---

[9] *See* Exhibit 1 to Defendant Lieutenant Governor Dan Patrick's Motion to Dismiss Plaintiff's Amended Complaint at 79.

and Andrade, therefore the Court should fully dismiss the Amended Complaint for every single said entity.

### III.   STANDARD OF REVIEW

ATI, RTAF, Wilson and Andrade move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides for the dismissal of a lawsuit when the plaintiff fails to state a claim upon which relief can be granted.  To avoid dismissal under Rule 12(b)(6), "the plaintiff must plead 'enough facts to "state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  While courts accept the factual allegations as true, they "will not 'strain to find inferences favorable to the plaintiffs'" or "accept conclusory allegations unwarranted deductions, or legal conclusions." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citation omitted).

### IV.   ARGUMENTS

**A.   Plaintiff's 42 U.S.C. § 1983 Claims Should Be Dismissed Because They Cannot Show that ATI, RTAF, Wilson and/or Andrade are Persons Acting Under Color of State Law.**

Rogers' first and second causes of action allege that ATI, RTAF, Wilson and Andrade (collectively the "Alamo Defendants") conspired with Lt. Governor Patrick and Commissioner Buckingham to "constructively terminate Rogers' employment in retaliation for her speech as a citizen involving a matter of public concern and directed and approved the withdrawal of Rogers' severance offer for Rogers' speech as a citizen involving a matter of public concern."  Amended Complaint ¶¶ 23-24.  Rogers pursues these alleged violations under 42 U.S.C. § 1983, which

12

"provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place" under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (internal quotations omitted). Under 42 U.S.C. § 1983, Plaintiff must allege that (1) the conduct in controversy was committed by a person acting under color of state law, and (2) the conduct deprived Plaintiff of a federal constitutional or statutory right. 28 U.S.C. § 1983; *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005); *Hebrew v. Houston Media Source*, 453 Fed. Appx. 479, 481 (5th Cir. 2011).

The defendant of a claim under § 1983 must be "a ***person*** who may fairly be said to be a state actor." *Lugar*, 457 U.S. 922 at 937 (emphasis added). "For purposes of § 1983, a party is a state actor either 'because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* "In general, private entities are not liable to suit under § 1983." *Hebrew*, 453 Fed. Appx. at 481 (holding that entity operating public access television was not liable under section 1983 because it was not a state actor); *see also Manhattan Cmty Access Corp. v. Helleck,* 587 U.S. 802, 809 (2019) ("The Free Speech Clause does not prohibit *private* abridgment of speech). A private entity can only qualify as a state actor in a few limited circumstances, including "(i) when the private entity performs a traditional [***and***] exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty Access Corp.,* 587 U.S. at 809; *Cornish*, 402 F.3d 545 at 549-50; *Behrghundi v. Save Our City-Mart, Tex.*, 2019 WL 7037939, at *4 (W.D. Tex. Dec. 20, 2019). Rogers argues that Defendants ATI, RTAF, and the individual Board Members Wilson and Andrade are all "state actors because they were created and organized by the Texas General Land

13

Office."  Amended Complaint, p. 30, ¶ 88.  Under each of these tests, the Alamo Defendants are clearly not state actors.

First, neither ATI nor RTAF are ***persons*** as required by 42 U.S.C. § 1983.  *See Wren v. Midwestern State Univ.*, 2019 WL 3099408, *6 (N.D. Tex. June 25, 2019) (holding a university is not a person under § 1983, and thus not a proper defendant); *see also Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).  Both are private, non-profit 501(c)(3) organizations, and neither are considered individual persons subject to § 1983 liability.  *See id.*  Second, even if they could be considered persons for purposes of § 1983, neither ATI nor RTAF could be considered state actors because they are private entities and do not meet any of the tests for state actor status.  Similarly, Wilson and Andrade cannot be considered state actors to the extent they are sued in their official capacity.  *See Will v. Michigan Dep't. of State Police*, 491 U.S. at 71 (holding that an individual being sued in an official capacity is not a "person" under 42 U.S. § 1983).  To the extent Wilson and Andrade are being sued in their individual capacities, they are not considered state actors for the reasons discussed more fully below.

None of the Alamo Defendants are considered state actors because they do not perform a traditional ***and*** exclusive public function.  Rogers argues that "Defendants' collaborative decision to force Rogers to resign was made in the name of purportedly furthering the Alamo and the Alamo Plan."  Amended Complaint ¶ 77.  Rogers further alleges that furthering the Alamo and the Alamo Plan are functions that have been traditionally and exclusively reserved to the State on behalf of the people of Texas.  Rogers, however, does not provide any support for such allegations against each of the Alamo Defendants, and instead lumps them together to allege collective wrongdoing.

Under the Management Contract between ATI and GLO, ATI is tasked with operating and managing the Alamo and Alamo Plan.  *See* Exhibit A.  The Alamo Complex commemorating the

14

historic battlefield consists of the Alamo Church, which was originally a mission established by the Spanish, Long Barrack, various other buildings near or on the Alamo grounds, the Alamo Gardens and three buildings (Crockett, Old Palace, and Woolworth) on Alamo Plaza that will become the Visitor Center and Museum. Although the State owns the Alamo and the land surrounding the property, neither ownership nor management of a historically significant site is an *exclusive* public function.[10] Historic churches, missions or battlefields are not exclusively run by the State of Texas nor the GLO. For example, the other four San Antonio Missions are run by the federal park service in partnership with the Catholic Church, which owns and operates the historic churches located at the missions.[11] Thus, ATI and the individual Board members cannot be found to be performing an exclusive public function by operating and managing the Alamo and the Alamo Plan pursuant to the Management Contract.[12]

Similarly, RTAF does not perform an exclusive state function by raising private funds in support of the Alamo. *See Bosman v. Child Assessment Ctr.*, 2025 WL 1019964, at *2-3 (S.D. Tex. April 3, 2025) (holding that a private foundation was not state actor where it was not performing a function that was traditionally and exclusively governmental). RTAF has no state actors who are Board members and it exclusively raises private funds for the Alamo and the Alamo Plan – a function that is not traditionally or exclusively governmental. Rogers now alleges that RTAF provides 40% of Rogers' salary and jointly set the terms and conditions of Rogers' employment with ATI. *See* Amended

---

[10] The City of San Antonio owns some parts of the Alamo Plaza and surrounding areas and leases said property to the GLO.

[11] *See https://www.nps.gov/saan/planyourvisit/plan-your-visit.htm*

[12] Plaintiff argues that managing the Alamo is similar to the US Supreme Court case, *Evans v. Newton*, 382 U.S. 296, 490 (1966) in which the U.S. Supreme Court held that managing a municipal city park is a public function, and thus a state actor, because it traditionally serves the local community similar to a fire or police department. The Supreme Court, however, later limited *Evans* and stated the Court never intended to establish a rule that the operation of a park is an exclusively public function. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 n. 8 (1978).

Complaint ¶ 10. This is not true. Rogers was paid out of the ATI's payroll account through its PEO. RTAF may have provided unrestricted funds to ATI to be used for certain costs, but that does not turn RTAF into a state actor. Additionally, there are no allegations that state who from RTAF or how RTAF set the terms and conditions of Rogers' employment. But even if this allegation is true, an entity that does not receive any public funds is not a state actor. *See Bosman*, 2025 WL 1019964, at *2-3.

Rogers argues that Defendants ATI, RTAF and the individual Board members are state actors because they were created and organized by the GLO. At the time of the alleged adverse action against Rogers, on October 22-23, 2025, ATI and RTAF were private 501(c)(3) non-profits operating separate and apart from the State and the GLO. Wilson and Andrade were also private individuals who were purely voluntary and unpaid ATI and RTAF Board members. Rogers argues in her Amended Complaint that The Alamo Trust is defined by statute as a "governmental body", citing § 552.003(1)(A)(xiv) of the Texas Government Code. Amended Complaint ¶ 9. But like much of Rogers Amended Complaint, this citation is misleading. The statute is part of Chapter 552 of the Texas Government Code also known as the Texas Public Information Act ("TPIA"). The TPIA provides a mechanism for citizens to inspect or copy government records. Specifically, the statute states that for purposes of the Texas Public Information Act, a governing body includes "an entity that receives public funds in the current or preceding state fiscal year to manage the daily operations or restoration of the Alamo, or an entity that oversees such an entity." This provision was added to ensure full transparency of any funds being used for the Alamo. But it does not turn a private, non-profit into a state actor for purposes of a §1983 First Amendment free speech retaliation claim, which has a different test to determine state actor liability. Even the fact that ATI receives public funding does not turn it into a state actor. *See Rendell Baker v. Kohn¸*457 U.S. 830, 841 (1982) (holding

16

that "[t]he school's receipt of public funds does not make the discharge decisions acts of the State. The school is not fundamentally different from many private corps whose business depends on contracts with the government, and whose acts do not become acts of the government by reason of their significant or even total engaging in performing public contracts.") Additionally, this definition would not apply to RTAF given that it does not receive any public funds.

Rogers also cannot show that either Lt. Governor Patrick or Commissioner Buckingham compelled or acted jointly with ATI, RTAF, Wilson or Andrade to take a particular action with respect to Rogers to support her conspiracy claim. Rogers alleges that Patrick "demanded that Rogers resign and implicitly or explicitly threatened Rogers and the ATI Board that he would withdraw his support from the Alamo Plan if Rogers was not terminated." But Rogers had already verbally resigned her position as CEO of ATI the evening of October 22, 2025, as relayed to Andrade. The next day, Rogers followed up with an email and text to Andrade (and email to Wilson), confirming that she was resigning. Rogers has pled no facts establishing any threat or coercion of the Alamo Defendants by Lt. Governor Patrick or Buckingham or otherwise showing a conspiracy or coordination between the Alamo Defendants and either Lt. Governor Patrick or Buckingham sought to coerce Rogers' resignation. Rogers made the decision to verbally resign before the ATI Board had the chance to consider the issue and before Wilson and Andrade even knew why Rogers insisted on resigning.

With respect to Commissioner Buckingham, Rogers only makes conclusory allegations that Commissioner Buckingham threatened the ATI Board that they would face serious consequences if they did not oust Rogers and encouraged them to terminate Rogers' employment. Rogers again pleads no facts to support this conclusory allegation. Commissioner Buckingham was not involved in any way with respect to Rogers' resignation or the ATI Board's acceptance of her resignation. Rogers now alleges that the GLO in response to a TPIA request withheld emails about Rogers that it

17

had with actors with which it shared a privity of interest, and implying the actors were the Alamo Defendants. Amended Complaint ¶ 61-62.  But again, there is no allegation of what these emails discuss, which of the Alamo Defendants are cited in these emails, or that they had anything to do with Rogers' resignation or withdrawal of her severance agreement because of her bad faith negotiation. Such conclusory allegations and unwarranted deductions are not enough to defeat a 12(b)(6) motion.  *See Southland Securities Corp.*, 365 F.3d at 361.  Further, the Commissioner's Motion to Dismiss Plaintiff's Amended Complaint clarifies that the emails actually pre-date Rogers' resignation by over a month and had nothing to do with her dissertation or resignation.  *See* Exhibit D to Buckingham's Motion to Dismiss.  Moreover, neither Lt. Governor Patrick nor Commissioner Buckingham were involved in any way in withdrawing her Separation Agreement after Rogers violated the confidentiality and non-disparagement provisions of the Separation Agreement she was negotiating.

Rogers alleges that ATI is so interdependent with and indispensable to the State of Texas and the GLO, specifically, with Lt. Governor Patrick and Commissioner Buckingham, that they must be considered joint participants.  Amended Complaint ¶ 97.  Rogers further argues that although the Management Contract creates a division between ATI and the GLO, the relationship between the Alamo Defendants and the laws of the State of Texas clearly indicate that ATI and RTAF may be fairly treated as the State itself because they were created by the GLO.  Again, Rogers ignores that at the time of the alleged adverse action against Rogers, ATI and RTAF were separate entities from the GLO.  Sections 3.05(a) and (b) and 3.06 of the Management Contract, which Rogers cites, are clear that ATI is an independent contractor that has the right to control the management and details of its obligations and responsibilities under the Contract, including exclusive control over its employees. Section 3.04(a) of the Management Contract specifically states that "[p]rovider shall have the sole

18

right and obligation to conduct and control all aspects of the daily management, operations, communications, and marketing of the Alamo," including "the right to supervise, hire, promote, discharge, transfer, or lay off employees." The GLO has no power to control management and personnel of ATI. The Management Contract further states that ATI "shall be solely responsible for the acts and omissions of its officers, agents, employees or other persons under its supervision, management and control." *See* Ex. A at § 3.05(b). Nowhere in the Management Contract or in ATI's Bylaws, does Lieutenant Governor Patrick or Commissioner Buckingham have any supervision, management or control over ATI employees, including Rogers.

Rogers tries to bolster her argument that the GLO and Commissioner Buckingham regularly control the daily operations at the Alamo by creating and organizing a committee to manage and oversee the Alamo Church interpretation plan without including any ATI employee or Board member and that they make daily management decisions, including regarding Alamo Trust employees. Amended Complaint ¶ 31. Again, this is false. The Church committee always had ATI involvement. Further, the GLO does have the ability to request removal of an employee pursuant to the Management Contract, but ATI does not have to agree.

She also alleges the GLO (1) required Rogers to have standing weekly meetings with the GLO Commissioner and staff; (2) required the ATI CFO to meet regularly with the GLO finance team; (3) required Rogers to go over the Alamo's project management contractor report every month; (4) had the GLO's Chief of Staff and General Counsel attend every Board meeting of both ATI and RTAF; and (5) installed a full-time GLO employee at the Alamo that would attend all meetings related to the Alamo Plan. Amended Complaint ¶¶ 33-38. There are some inaccuracies with these allegations, but even assuming they are true, they cannot overcome the fact that Rogers has failed to credibly allege in her Amended Complaint that Commissioner Buckingham had anything to do with

19

the ATI Board's acceptance of Rogers' resignation or the withdrawal of her Separation Agreement. Further, Rogers' ignores the fact, that the GLO has an absolute right to make sure that ATI was performing its services under the Management Contract appropriately.  Additionally, the GLO did not relinquish its authority to oversee the Alamo, including making sure that all parties are working together in furtherance of the Alamo Plan, including overseeing the project management of the redevelopment of the Alamo as well as items such as the script for the Museum and Visitor Center. The GLO was a party to the signed Alamo Plan and had a right to oversee its implementation.  But this authority of the GLO does not turn ATI into a state actor.

"[T]he '[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts' " *Cornish*, 402 F.3d at 550 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).  The Supreme Court has been quite clear that:

> [n]umerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities. As this Court's many state-action cases amply demonstrate, that is not the law.

*Manhattan Cmty. Access Corp.*, 587 U.S. at 811, 814-15 (holding a public access channel was not a state actor where operating public access channels on a cable system is not a traditional, exclusive function of the state); *see also Rendell Baker v. Kohn¸*457 U.S. 830, 841 (1982) (holding a private school is not a state actor given that providing education is not an *exclusive* function of the state).  Additionally, the GLO has the option to terminate the Management Contract and ATI's services pursuant to § 3.29 and could ostensibly contract with another non-profit if it chose

20

to do so just as it did when it terminated the DRT. The Alamo Defendants are not so indispensable to the State, where the GLO could contract with any entity they choose to manage the Alamo.

Here, Rogers cannot show that ATI, RTAF, Wilson or Andrade are state actors under any of the proffered state actor tests used by Courts to make such a determination. Accordingly, the Court should dismiss Rogers' claims against the Alamo Defendants.

**B.      Even if the ATI, RTAF, Wilson and Andrade Could be Considered "State Actors", Plaintiff Cannot Support a Claim for First Amendment Free Speech Retaliation Under 42 U.S.C. § 1983**

To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) she suffered an adverse employment action; (2) she spoke as a citizen on a matter of public concern; (3) her interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech motivated the Defendant's conduct, *i.e.*, the adverse employment action. *See Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (emphasis added); *see Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015).[13]

Rogers cannot meet any of the elements of her Free Speech retaliation claim under 42 U.S.C. § 1983. First, Rogers cannot show that she suffered an adverse employment action by ATI, RTAF, Wilson and Andrade because she resigned. Rogers' own resignation letter and texts to Andrade are clear that she resigned without any coercion from ATI, RTAF, Wilson or Andrade. She attempts to twist the timeline and claims that she was given an ultimatum by Andrade that if she did not resign, she would be fired. But Rogers had verbally resigned on October 22, 2025 and her subsequent texts to Andrade and resignation emails confirm that she formalized her resignation on October 23, 2025. *See* Exhibits E and F. Additionally, Rogers does not plead that

---

[13] "Claims by private governmental contractors that their speech caused retaliation against them by the government are analyzed using the same framework as that for claims by public employees." *Culbertson*, 790 F.3d at 618 (5th Cir. 2015) (citing *Bd. of Cnty. Comm'rs v. Umbehr,* 518 U.S. 668, 684–85, (1996) (applying the public employee framework to college instructors who provided training to police department through a contract).

either Wilson, ATI or RTAF gave her the same ultimatum.  Finally, even if Andrade made such comments, she did not have the authority to speak on behalf of the full ATI Board.

Rogers further alleges that ATI, RTAF, Wilson and Andrade were compelled by Lt. Governor Patrick and Commissioner Buckingham to withdraw her Separation Agreement.  While this is patently false, even if true it would not support a claim for retaliation.  Rogers does not allege any facts to support this conclusory allegation.  Rogers cannot base her Free Speech retaliation claim on the withdrawal of the Separation Agreement given that *she was not employed* at the time and neither Lt. Governor Patrick[14] nor Commissioner Buckingham had anything to do with the withdrawal of her Separation Agreement.  Rogers does not cite any authority that post-employment settlement negotiation actions can be the basis of an employment retaliation claim.  Rogers formally resigned on October 23, 2025, and then engaged in settlement negotiations of the Separation Agreement the next day on October 24, 2025.  Over the course of the next few days, the ATI Board and Rogers engaged in settlement negotiations.  One of the sticking points was that Rogers refused to agree to a provision to keep the terms of the Separation Agreement confidential and not disparage any elected official or local governmental bodies who were affiliated with the Alamo.  When Rogers finally agreed to the provision, unbeknownst to the ATI Board, Rogers had simultaneously sat for a scathing article in Texas Monthly that contravened the confidentiality and non-disparagement provisions in the Separation Agreement.  Rogers sought a six-figure severance payment while simultaneously preserving the ability to publicly criticize Alamo officials. She attempted to secure the financial benefits of a settlement

---

[14] Rogers alleges that an ATI Board Member met with Lt. Governor Patrick and Commissioner Buckingham to re-commence severance negotiations, but that Lt. Governor Patrick directed the Alamo Defendants to cease severance discussions with Rogers following the Texas Monthly article.  Amended Complaint ¶ 66-67.  Again, even if true, Rogers ignores that these allegations could not support the fact that neither had anything to do with the withdrawal of her Separation Agreement.  It was her own duplicitous actions during settlement negotiations that led ATI to withdraw her Separation Agreement.

while engaging in disparaging commentary about the organization in the *Texas Monthly* article—effectively seeking both compensation and the freedom to undermine the very institution from which she demanded payment.

Once it became clear that Rogers promised not to disparage elected officials associated with the Alamo while simultaneously disparaging them publicly, the ATI Board knew that Rogers was not acting in good faith and did not have any intention of complying with the confidentiality and non-disparagement provisions. And it was Rogers's bad faith conduct during severance and separation negotiations, and nothing else, that prompted the ATI Board to withdraw the Separation Agreement. This action by the ATI Board is not an adverse employment action where Rogers was no longer employed by ATI. *See Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. Oct. 31, 2025) (stating that "adverse employment actions are discharges, demotions, refusal to hire, refusal to promote, and reprimands"). Similarly, the withdrawal of the Separation Agreement cannot be the basis of her conspiracy claim where neither Commissioner Buckingham nor Lt. Governor Patrick was involved in that decision and neither directed ATI, RTAF, Wilson nor Andrade to withdraw the Separation Agreement.

Second, Rogers cannot show that she was speaking as a private citizen on a matter of public concern. The Supreme Court is clear that there is no First Amendment protection for speech when an employee makes the statement as part of their official duties. *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). The analysis thus centers around "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks,* —— U.S. ——, 134 S.Ct. 2369, 2379 (2014).

Rogers argues she was merely a private citizen/graduate student making comments on issues related to education in the State of Texas, but she was clearly making her remarks as the

23

Executive Director of ATI.  Rogers clearly references being "Executive Director of the Alamo Trust" and discusses the Commissioner, Lt. Governor Patrick, the money allocated to the Alamo Plan by the Legislature in 2021, and her working on a major appropriation for the 2023 session for the Alamo Plan redevelopment process for which she has been charged with implementing. *See* Exhibit. D.  She also highly criticized the Texas Legislature and the bills that had been passed in the prior legislative session regarding education, which she said was not the purview of the Texas Legislature. *Id.*  She then discusses balancing GLO Commissioner and Lieutenant Governor Patrick's desire to emphasize the Battle of the Alamo in the future Alamo Visitor Center and Museum with the agenda of local San Antonio politicians who wanted to explore other topics of the indigenous people and slavery related to the Alamo defenders. *See id.* She closed that section of her dissertation stating that she "had to be careful with [her] study and its implications as it could have negative consequences for the $300 million Alamo Plan and her job." *Id.*

Rogers's speech was clearly made within her capacity as the Executive Director of ATI and not as a private citizen.  A fact made more clear when coupled with her March 2023 profile on the USC Rossier School of Education School website that discussed at length her role as the Executive Director of ATI and how her "work as Executive Director of the Alamo Trust in San Antonio" involved "broadening the story of Texas' beginnings, including reconciling conflicting views of the part slavery played in Texas' war for independence from Mexico in the 1830s."[15] Rogers was not writing her dissertation in a vacuum; rather she highlighted her role as Executive Director of ATI and how it informed her graduate school education and dissertation.  In the article, she discussed the complex history of the Alamo, controversial viewpoints related to slavery and the Alamo defenders, and her role in overseeing the multi-million-dollar Alamo redevelopment

---

[15] https://rossier.usc.edu/news-insights/news/global-edd-student-commits-retelling-story-alamo-good-bad-and-ugly

plan.  All points that she discussed in her dissertation.  And all points that violated her fiduciary duties and confidentiality obligations to ATI, which prohibited her from revealing confidential company information to third parties or using it for personal gain or outside activities.  Because Rogers made these comments while expressly holding herself out as the Executive Director of ATI and within her employment duties, the speech is not considered public speech and not protected by the First Amendment.  *See Garcetti*, 547 U.S. at 421; *Anderson*, 845 F.3d at 596 (5th Cir. 2016); *Gibson v. Kilpatrick*, 773 F.3d 661, 670 (5th Cir. 2014).

With respect to the third element, ATI's interest in the efficient provision of services outweighs Rogers's interest in her speech.  Using Rogers's own words, ATI has been entrusted by the GLO to manage and operate the Alamo as well as the almost $600 million allocated by the Texas Legislature during the 88th and 89th legislative sessions for the implementation of the Alamo Plan.  ATI has every right to make sure their Executive Director and/or President and CEO is committed to fulfilling their contractual obligations to the GLO and not jeopardizing the various public and private funding needed to fulfill those obligations.  Additionally, the ATI Board's decision to withdraw the Separation Agreement because of Rogers' bad faith actions during negotiations outweighs any free speech interest of Rogers.  ATI and RTAF further have rights to ensure that any monies paid to Rogers are paid in exchange for a settlement agreement both sides intend to abide by.

Rogers also cannot meet the fourth element of a First Amendment free speech retaliation claim given that her speech did not motivate any action taken by ATI, RTAF, Wilson and/or Andrade. Rogers does not even allege that RTAF or Wilson took any action against Rogers because of her dissertation remarks.  Further, Rogers does not sufficiently plead that ATI and Andrade were motivated by her dissertation remarks given that she resigned before the ATI Board

or Andrade were even aware of her remarks.  The fact that the ATI Board accepted her resignation is not enough to prove that the ATI Board or Andrade were motivated by her remarks in her dissertation.  In sum, because Rogers cannot meet the four elements of First Amendment free speech retaliation, she fails to state a claim pursuant to § 1983.  Thus, the Court should dismiss Rogers's § 1983 retaliation claim.

Further, Rogers' conspiracy claim against the Alamo Defendants should be dismissed because she fails to show a violation of her First Amendment rights.  *See Lee v. Whispering Oaks Home Owners Assn.*, 797 F.Supp.2d 740, 755 (W.D. Tex. 2011) (holding that conspiracy claim under § 1983 fails where plaintiffs failed to show a violation of their constitutional rights).  To make a conspiracy claim actionable, the actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. *Id.* Rogers' fails to allege any actual agreement between the Alamo Defendants and Lt. Governor Patrick and/or Commissioner Buckingham to force her to resign because of her dissertation or withdraw her Severance Agreement. Thus, Rogers' conspiracy claim fails and should be dismissed.

C.     **If Wilson and Andrade are Found to Be State Actors, Both are Protected by Qualified Immunity.**

Even if Wilson and Andrade are found to be state actors, which they deny given they are not state employees and are not paid by the State of the GLO, both are entitled to qualified immunity. *See Pearson v. Shriner's Hospitals for* Children, 133 F.4th 433, 446-447 (5th Cir. 2025) (relying on *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity bars suit against state officials who perform "discretionary functions" in their individual capacity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* "Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it." *Id.* (quoting *Zarnow v. City of Wichita*

26

*Falls*, 500 F.3d 401, 407 (5th Cir. 2007)). Specifically, the plaintiff must show that (1) the official violated a constitutional right and (2) that right was "clearly established at the time." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022).

Rogers has failed to meet her burden. Plaintiff alleges that Wilson and Andrade violated her First Amendment right to free speech by accepting her resignation after Lt. Governor Patrick suggested she resign for the comments she made in her dissertation. As discussed above, Rogers cannot support a First Amendment free speech claim. Even if Rogers' First Amendment free speech claim is viable, Rogers cannot show that either Wilson or Andrade violated a constitutional right by accepting her resignation. Rogers contends that the ATI Board should have prevented her resignation and not accepted it, yet she told Andrade multiple times that she was resigning after her conversation with Lt. Governor Patrick. Rogers, however, never requested a meeting with the ATI or RTAF Boards, Chairman Wilson or Chairman Johnson and never informed anyone that she had no intention of resigning. The Fifth Circuit recognizes this as "failure to intervene" theory, which Rogers is arguing that Wilson and Andrade failed to perform ministerial duties within their official duties simply by accepting her resignation. The Fifth Circuit, however, has held that public officials are entitled to qualified immunity when it is unclear if they had a duty to intervene. *See Pearson*, 133 F.4th at 446-447. Rogers has not and cannot point to any case law that states that either Wilson or Andrade were required to intervene and prevent Rogers from resigning. *See id.* Given that Rogers at all times insisted she intended to resign, there is no indication that any intervention by the Alamo Defendants would have even made a difference.

Furthermore, Rogers cannot show that the ATI Board's withdrawal of Rogers's Separation Agreement violates "an established statutory or constitutional rights of which a reasonable person would have known." Neither ATI nor RTAF has a severance policy and there is no federal or state

27

law or constitutional right requiring any entity – whether public or private – to provide severance to an employee who resigns or is discharged for any reason. Many organizations will enter into separation agreements with former employees for various reasons, including to resolve any potential litigation that could arise in the future – but it is not a statutory or constitutional right. When Rogers acted in bad faith in the settlement negotiations prompting the ATI Board to withdraw her Separation Agreement, neither Wilson nor Andrade, violated "any clearly established statutory or constitutional rights of which a reasonable person would have known." *See Pearson*, 133 F.4th at 446. Additionally, at that time of the withdrawal of Rogers' Separation Agreement, Andrade was not a voting member of the ATI Board and had no authority to act on behalf of the ATI Board or RTAF. Thus, both Wilson and Andrade are entitled to qualified immunity in the instant action.

**D.**     **If ATI, RTAF, Wilson and Andrade are Found to Be State Actors, Sovereign Immunity Bars Rogers' Claims Against Them.**

Sovereign immunity deprives a trial court of jurisdiction to hear suits against the State, its agencies, and its officials unless the State legislature or Congress expressly waives the State's immunity. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Lt. Governor Patrick and Commissioner Buckingham are entitled to sovereign immunity from Rogers' claims. If the Court deems ATI, RTAF, Wilson and Andrade to be State Actors, then they should be entitled to sovereign immunity as well.

A government contractor or private citizen acting as an agent of the state is entitled to sovereign immunity for its "actions taken within the scope of [its] authority for the purpose of furthering the project." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 (Tex. 2015); *see also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (finding private contractors entitled to sovereign immunity where plaintiffs did not allege contractors "exceeded

28

their authority or in any way deviated from Congress's direction or expectations"). Thus, government contractors share in the sovereign's immunity unless plaintiffs allege the contractors "exceeded their authority or in any way deviated from [the sovereign's] direction or expectations." *Ackerson*, 589 F.3d at 207.

In their motions to dismiss, Lt. Governor Patrick and Commissioner Buckingham argue that they are entitled to sovereign immunity, and the Alamo Defendants adopt and incorporate their arguments herein.   Rogers did not plead that ATI, RTAF, Wilson or Andrade exceeded their authority.  Thus, sovereign immunity shields ATI, RTAF as well as Wilson and Andrade from any actions they took in their official capacities.

Additionally, a plaintiff's claims are barred unless she can establish that sovereign immunity has been waived or an exception to the doctrine applies.  One exception is the *Ex Parte Young* exception that allows injunctive or declaratory relief against state officials if the plaintiff can show (1) the state officials were acting in their official capacities; (2) the plaintiff is seeking prospective relief to address the ongoing conduct; and (3) there is a violation of federal law. *Williams on Behalf of J.R. v. Reeves,* 954 F.3d 729, 737 (5th Cir. 2020); *Hall v. Tex. Comm'n on Law Enf't*, 685 Fed. App'x 337, 340 (5th Cir. 2017). *Rogers* cannot prove element two (2) of the *Ex Parte Young* exception. *See id.* Here, Rogers is not seeking prospective injunctive relief against the Alamo Defendants in this case.  Instead, Rogers seeks a declaration that "the acts and practices complained of in this Amended Complaint are in violation of the First Amendment" and an injunction "permanently restraining these violations of the First Amendment." Amended Complaint ¶ 104b..  "[W]hen a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).  The declarations and injunctive relief

29

sought by Rogers are not about future conduct but about allegations of past misconduct. *Waller v. Hanlon*, 922 F.3d 590, 603-04 (5th Cir. 2019) (holding that there is "no standing to seek declaratory relief" when the focus is solely on past conduct). Accordingly, the *Ex Parte Young* exception does not apply, and sovereign immunity protections extends to ATI, RTAF, Wilson and Andrade.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss the Plaintiff's Amended Complaint against ATI, RTAF, Wilson and Andrade pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice. Defendants further request any and all other relief to which they may be entitled.

Respectfully submitted,

STEPTOE & JOHNSON PLLC
711 Broadway, Suite 220
San Antonio, Texas 78215
Telephone: (210) 953-1955

By:  */s/ Soña Ramirez*
     SOÑA RAMIREZ
     Texas Bar No. 24040330
     sona.ramirez@steptoe-johnson.com
     JAMES M. TRUSS
     Texas Bar No. 00797577
     Federal Bar No. 255173
     marty.truss@steptoe-johnson.com

**ATTORNEYS FOR DEFENDANTS, ALAMO TRUST, INC., REMEMBER THE ALAMO FOUNDATION, WELCOME WILSON, JR., and ESPERANZA ANDRADE**

30

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of March 2026, a true and correct copy of the foregoing has been served, pursuant to the Texas Rules of Civil Procedure, to the following:

Lawrence Morales II
lawrence@themoralesfirm.com
Allison S. Hartry
ahartry@themoralesfirm.com
THE MORALES FIRM, P.C.
6243 IH 10 West, Suite 132
**ATTORNEYS FOR PLAINTIFF**

Jason M. Davis
jdavis@dwlawpc.com
H. Jay Hulings
jhulings@dslawpc.com
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas  78204
**ATTORNEYS FOR DEFENDANT,**
**DAWN BUCKINGHAM, M.D.**

William H. Farrell
Biff.farrell@oag.texas.gov
Assistant Attorney General
Office of the Attorney General
General Litigation Division
PO Box 12548, Capitol Station
Austin, Texas  78711-2548
**ATTORNEYS FOR DEFENDANT,**
**LIEUTENANT GOVERNOR DAN PATRICK**

_/s/ Soña Ramirez_
SOÑA RAMIREZ

31