IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KATE ROGERS, ED.D., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 5:25-cv-1500-XR |
| | § | |
| ALAMO TRUST, INC., DAN PATRICK, | § | |
| DAWN BUCKINGHAM, REMEMBER | § | |
| THE ALAMO FOUNDATION, | § | |
| WELCOME WILSON, JR., and | § | |
| ESPERANZA ANDRADE, | § | |
| *Defendants.* | § | |

**DEFENDANT, TEXAS LT. GOVERNOR DAN PATRICK'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS COMMISSIONER BUCKINGHAM AND LT. GOVERNOR PATRICK'S MOTIONS TO DISMISS**

Plaintiff's opposition to Lt. Governor Patrick's Motion to Dismiss improperly conflates the roles, responsibilities and actions of Commissioner Buckingham and the Lt. Governor without any basis. Plaintiff understandably wants to avoid the statutory framework of Tex. Nat. Res. Code § 31.451 and the Fifth Amended and Restated Bylaws of Alamo Trust, Inc. (the "Bylaws") of Plaintiff's employer, Dkt. 24 at 10-12, because they specifically establish the fact that Lt. Gov. Patrick had, and continues to have, absolutely no authority over the Remember the Alamo Foundation or its officers. Absent such authority, Plaintiff lacks standing as her claims are neither traceable nor redressable by any order against Lt. Governor Patrick. Nor do any of the precedents relied upon by Plaintiff support a denial of Lt. Gov. Patrick's sovereign and qualified immunity. Finally, Plaintiff openly admitted her study "could have negative consequences for the Alamo Plan

Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint

as well as [her] job."[1] When her prognostications came true, Plaintiff resigned her position, and, instead of looking in the mirror, Plaintiff chose to cast blame on everyone but herself. Nevertheless, Lt. Gov. Patrick replies to Plaintiff's response as follows:

## II.     ARGUMENT AND REPLY POINTS

### 1.  Plaintiff failed to allege a *plausible* claim.

While Plaintiff's speculative and conclusory allegations may qualify as interesting sound bites, they fail to allege a *plausible* claim on the fact of Plaintiff's Complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 556 U.S. at 679-80. However, sheer possibility remains the sole basis of Plaintiff's allegations.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of

---

[1] *See* Ex. 1 attached to Lt. Gov. Patrick's Motion to Dismiss at 80.

truth." *Iqbal*, 556 U.S. at 679. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Id.*

Plaintiff fails the plausibility test because Tex. Nat. Resources Code §31.451, the Fifth Amended and Restated Bylaws of Alamo Trust, Inc.[2], and Plaintiff's own actions indisputably refute Plaintiff's claims.

### 2. Plaintiff has failed to establish standing to pursue claims against Lt. Gov. Patrick.

#### a. Plaintiff offered to resign a week before Lt. Gov. Patrick voiced any concern regarding the negative consequences for the Alamo Plan caused by Plaintiff.

Accepting Plaintiff's allegations as true, she offered to resign at the board meeting on October 15, 2025, which was more than a week before Lt. Gov. Patrick initially voiced any concern about Plaintiff's newly discovered disparaging comments about the Texas Legislature that had then recently appropriated more than $400 million to the Alamo Foundation. Dkt. 19 ¶ 55. Moreover, her offer of resignation was based on her communications director's post on X regarding Indigenous People's Day. *Id.* at ¶¶ 52-55. Notably, her offer of resignation on October 15, 2025, could not possibly have then been related to Lt. Gov. Patrick's concerns forwarded to the Alamo Foundation on October 23, 2025.[3]

#### b. Lt. Gov. Patrick does not have any authority over Alamo Trust, Inc.

The Alamo Trust Bylaws explicitly provide for the management of the Corporation's affairs, designation of an Executive Director, along with ability of the Texas General Land Office to appoint an individual to serve in an advisory capacity only to the Alamo Trust Foundation. None of the corporate documents provide Lt. Gov. Patrick any authority to participate in the

---

[2] *See* Ex. 2 attached to Lt. Gov. Patrick's Motion to Dismiss. Dkt. 21.
[3] *See* Ex. 3 attached to Lt. Gov. Patrick's Motion to Dismiss. Dkt. 21.

management of the Alamo Trust. Further, any power or duty related to the Alamo complex was vested solely in the land office. Tex. Nat. Res. Code § 31.451(b). Plaintiff has not referenced any authority to indicate otherwise.

### c. Plaintiff's alleged injury cannot be redressed by a court order against Lt. Gov. Patrick.

*First,* for primarily the same reasons, Plaintiff remains unable to show any favorable ruling by the Court would, or even could, redress Plaintiff's alleged injury. "To satisfy redressability, a plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Reule*, 114 F.4th 360, 368 (5th Cir. 2024) (citing *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019)). Lacking any authority over the Alamo Trust, any order issued by the Court against Lt. Governor Patrick would be "utterly meaningless." *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc).

*Second,* Plaintiff's reliance on *Bennett v. Spear*, 520 U.S. 154 (1997) fails to alter the redressability at issue in this case. In apposite to the facts of this case, the statement at issue in *Bennett* was a final agency opinion that included a warning that "[t]he measures described below are nondiscretionary, and *must* be taken by [the Bureau]." 520 U.S. at 171 (emphasis added). Such nondiscretionary agency action is remarkably different than the Lt. Gov.'s exercising his own First Amendment right to voice his belief that Plaintiff's "writings undermine the credibility of the Alamo Trust."[4]

*Finally,* Plaintiff's own opposition indicates the type of speculative allegations insufficient to support redressability. *See Inclusive Cmtys.*, 946 F.3d at 655. Plaintiff's "reinstatement will depend on a variety of practical factors" and her claim that Defendants would "likely object"

---

[4] *See* Ex. 3, attached to Lt. Gov. Patrick's Motion to Dismiss. Dkt. 21.

amount to nothing more than mere speculation. Dkt. 24 at 8. Plaintiff's claim that "[w]ithout a court order to the contrary, it is plausible and likely the Lt. Gov. Patrick . . . would continue to interfere in [Plaintiff's] free speech rights and her employment" continues to simply ignore the indisputable fact that Plaintiff attempted to resign well before Lt. Gov. Patrick said anything. Dkt. 24 at 10. The Bylaws preclude Lt. Gov. Patrick from being able to reinstate Plaintiff, Plaintiff's claims against him are not redressable by an order against the Lt. Gov., and she lacks standing.

**3. Plaintiff failed to rebut Lt. Gov. Patrick's sovereign immunity.**

Recognizing that Lt. Gov. Patrick's "involvement at the Alamo is less formalized," Dkt. 24 at 16, Plaintiff cites some examples of the Lt. Gov. indicating an interest on how the State's $600 million investment in the Alamo is being spent. *Id.* Yet, none of Plaintiff's examples involve any personnel decisions. Such allegations, even assuming they are true, fail to "answer[] the question, 'who pulled the strings behind' Rogers's termination?" Dkt. 24 at 14 (citing *Casper v. West,* 4:23-cv-42, 2025 U.S. Dist. LEXIS 27957, at *32 (E.D. Tex. 2025).

Nor do the precedents relied upon by Plaintiff alter the determination of Lt. Gov. Patrick's sovereign immunity. Plaintiff relies on *Casper, supra,* and *Jackson v. Wright,* 82 F.4th 362, 365-66 (5th Cir. 2023), for the proposition that "the Fifth Circuit held that the board members had far more than the necessary 'scintilla of enforcement'" and 'general duty to see that the laws of the state' were implemented." Dkt. 24 at 15. However, Lt. Gov. Patrick was not a board member. As such, Lt. Gov. Patrick did not have the required "connection" to Plaintiff's offer of resignation on October 15, 2025, or subsequent resignation on October 22 or 23, 2025. *See Ex parte Young,* 209 U.S. 123 (1908). Plaintiff's claims against the Lt. Gov., in his official capacity, are barred by sovereign immunity.

**4. Plaintiff's dissertation was conducted specifically for the benefit of the Alamo.**

Despite acknowledging that "for speech to be subject to the employer's 'control,' it must 'owe[] its existence to' the 'public employee's professional responsibilities,' or otherwise be 'for the benefit of the employer." Dkt. 24 at 19 (citing *Bevill v. Fletcher,* 26 F.4th 270, 278 (5th Cir. 2022), Plaintiff simply ignores that her speech was admittedly conducted for the benefit of her employer. Instead, she focuses only on the first prong of the analysis regarding the public employee's professional responsibilities before concluding that "Defendants present no valid legal or factual argument that [Plaintiff] was speaking as an employee" without considering "for the benefit of the employer." Dkt. 24 at 19-21.

Plaintiff's dissertation specifically indicates "the main purpose of the study was to inform programming at the Alamo,"[5] how the practices and strategies could be applied to the Alamo,"[6] and that the study's findings were "intended to inform the implementation of the Alamo plan."[7] When considering Plaintiff's own statements, there is simply no rational argument that Plaintiff's dissertation was not conducted for the benefit of the Alamo and her employer, the Alamo Trust. As such, Plaintiff's speech was made pursuant to her official duties and is "unprotected by the First Amendment." *Wetherbe v. Texas Tech Univ. Sys.,* 138 F.4th 296, 302 (5th Cir. 2025), *cert. denied,* 2026 WL 79851 (U.S. Jan. 12, 2026). And, without any underlying First Amendment violation, Plaintiff's conspiracy claim similarly fails. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994).

---

[5] *See* Ex. 1 attached to Lt. Gov. Patrick's Motion to Dismiss at 21 (cleaned up).
[6] *See* Ex. 1 attached to Lt. Gov. Patrick's Motion to Dismiss at 26 (cleaned up).
[7] *See* Ex. 1 attached to Lt. Gov. Patrick's Motion to Dismiss at 66 (cleaned up).

**5. Plaintiff failed to show Lt. Gov. Patrick violated any clearly established right of Plaintiff.**

Qualified immunity protects Lt. Gov. Patrick "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Disregarding Lt. Gov. Patrick's own First Amendment rights, Plaintiff argues "the law was clearly established [in 2009] that speech directed to a person outside of the workplace on a matter of public concern only tangentially related to official duties is speech protected by the First Amendment." Dkt. 24 at 29 (citing *Petrie v. Salame,* 546 Fed. App'x 466, 470 (5th Cir. 2013)). But, it is difficult to fathom how Plaintiff's speech could only be tangentially related to her official duties when its "main purpose[] was to help inform future programming at the Alamo."[8]

In *Petrie,* the court concluded that plaintiff's speech was not related to his job duties or acting pursuant to his official duties. 546 Fed. App'x at 469. That is not the situation here. *See supra.* The court went on to explain, "even if an employee speaks on a matter of public concern, his speech is not protected unless his interest in expressing himself outweighs the government's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed.,* 391 U.S. 563, 568 (1968). While the district court concluded that nothing in the evidence suggested that Petrie's speech had any potential or actual disruptive impact on the Grapevine Police Department's operations," *Petrie,* 546 Fed. App'x at 470, in this case, Plaintiff specifically understood and acknowledged that her study "could have negative consequences for the Alamo Plan."[9] As such, Plaintiff's speech cannot outweigh any speech of the Lt. Gov.

---

[8] *See* Ex. 1, attached to Lt. Gov. Patrick's Motion to Dismiss. Dkt. 21.
[9] *See* Ex. 1, attached to Lt. Gov. Patrick's Motion to Dismiss. Dkt. 80.

In her response, Plaintiff admits "the obvious," Dkt. 24 at 30, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employees might have enjoyed as a private citizen." *Garcetti v. Ceballos,* 547 U.S. 410, 421-22 (2006). This holding alone forecloses Plaintiff's claims.

**6. Plaintiff's allegations fail to constitute retaliation under the First Amendment.**

Finally, Lt. Gov. Patrick's response to Plaintiff's disparaging remarks about the Texas Legislature has "particular significance" since his own First Amendment rights are implicated." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000). And, liability can only attach if he "imposed or threatened official action." *Noonan v. Kane,* No. 20-3610, 2022 WL 2702153, at *1 (3rd. Cir. July 12, 2022). Here, Lt. Gov. Patrick neither "imposed" nor "threatened" any official action. *See,* Ex. 3, Dkt. 21. If for no other reason than he didn't have the authority to do so. At most, he requested the Board of Directors of Alamo Trust, Inc. to review Plaintiff's prior statements to determine if they were compatible with the telling of the history of the battle of the Alamo. *Id.* "[C]riticism, an investigation (or an attempt to start one), and false accusations" are "harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman,* 174 F.3d 498, 512 (5th Cir. 1999).

Plaintiff understandably regrets disparaging the very officials that provided her employer $600 million dollars to fulfill its mission, but any such regret results from her own conduct and not that of any Defendants named herein. Plaintiff has not alleged a cognizable cause of action against Lt. Gov. Patrick, and her claims must be dismissed.

<u>**PRAYER**</u>

The Court should put an end to Plaintiff's crusade by granting Lt. Governor Patrick's Motion to Dismiss, entering a final take-nothing judgment against Plaintiff and in Lt. Governor Patrick's favor awarding him all taxable costs of court and granting him such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ William H. Farrell
WILLIAM H. FARRELL
Deputy Chief, General Litigation Division
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
(512) 979-5561| FAX: (512) 320-0667
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

***Attorneys for Defendant,***
***Texas Lt. Gov. Dan Patrick***

## CERTIFICATE OF SERVICE

I certify that on March 24, 2026, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ William H. Farrell
WILLIAM H. FARRELL
Deputy Chief, General Litigation Division